# CHARLESTOWN.

WHEELING BRIDGE CO. *v.* WHEELING & BELMONT BRIDGE CO.

Submitted September 6, 1890.—Decided September 13, 1890.

1. FERRIES.

Long after the license and establishment of a ferry the legislature, by general law, provided that the county courts should not license a ferry within a half mile, in a direct line, of one already established. *Held*, this general law, so far as it applied to such existing ferry, did not create in it the right to a perpetual monopoly, but was repealable at the will of the legislature.

2. FERRIES.

The purchase of said ferry by the W. & B. Bridge Co., under an enabling act authorizing them to make the purchase, could not enlarge nor add to the ferry-franchise or privileges, nor convert said monopolistic feature into an irrevocable perpetuity in the hands of the vendee, but left it subject to repeal just as it was held by the vendor; and the legislature having repealed it by general law, the W. & B. Bridge Co. have no right to complain, and a new bridge may be erected within the restricted territory, without any violation of vested rights.

3. EMINENT DOMAIN.

One internal improvement company may, in the exercise of eminent domain, take the real estate of another internal improvement company, in the same manner and generally under the same conditions that it may take the lands owned by others, provided the lands proposed to be taken are not necessary to the enjoyment of its franchise by the defendant company; nor will any mere trivial or temporary use by the defendant company be sufficient to protect its land from such condemnation and appropriation.

4. INSTRUCTIONS—VERDICT.

Where there is sufficient evidence to support the hypothesis of an instruction, and it correctly propounds the law, and is otherwise unobjectionable, it is error to refuse it; but, if this court sees plainly from the record that the party offering the instruction has not been injured by its rejection, the verdict of the jury will not be disturbed on account of the court's refusal to grant it.

5. EVIDENCE.

Submitting to the jury under our statute "particular questions of fact" is within the discretion of the trial-court, subject to review; but it is not erroneous to refuse to permit such questions to be propounded, when they are immaterial or irrelevant, and

unless the answers thereto, if contrary to the general verdict, would control the same and be conclusive of the issue.

6. EVIDENCE—VERDICT.

Motions to exclude the plaintiff's evidence, or to set aside a verdict, on the ground that it is contrary to the evidence, ought to be overruled, where the court can not grant the same without usurping the functions of the jury.

*A. J. Clark* and *H. M. Russell* counsel for appellant.

*H. M. Russell* cited:

31 W. Va. 710; 25 W. Va. 538; 27 W. Va. 218; 29 W. Va. 140; 13 W. Va. 230; 5 W. Va. 118; Code (1868) c. 132, s. 1; 2 Min. Inst. 18; Bouv. L. Dict. "Highway"; 110 U. S. 564; 16 Pa. St. 404; 51 Ill. 272; 28 N. H. 222; 49 Wis. 162; 53 Wis. 537; 33 Minn. 406; 34 Minn. 227; 70 N. Y. 191; 63 N. Y. 326; 46 N. Y. 546; 43 N. Y. 147; Code c. 135, s. 1; Code c. 42, s. 20; 22 Mich. 201; 26 W. Va. 596; 47 Mich. 456; 29 W. Va. 140; Desty Fed. Pro. 692; 121 U. S. 74; 79 Cal. 633; Acts of Va. 1816 pp. 186–190; Acts of Va. 1846 pp. 149–151; 3 Wall. 51; 17 W. Va. 411; 7 Gratt. 231; Code c. 44, s. 6; 115 U. S. 650; 11 Pet. 420; 13 N. J. Eq. 81; 17 W. Va. 825; 20 Gratt. 484; 32 Pa. St. 169; 105 Ill. 511; 22 Minn. 372; 31 W. Va. 685.

*W. P. Hubbard* counsel for appellee cited:

17 W. Va. 412; 7 Gratt. 231; Acts Va. 1839–40 c. 79 § 1; 16 How. 523; 3 Wall. 51; Cooley Con. Lim. 396; 11 Pet. 420; 9 How. 172; 13 How. 71; 4 Ohio St. 308; 10 S. E. Rep. 405; Hutchinson's Treatise 916; 17 W. Va. 812.

LUCAS, JUDGE:

The Wheeling Bridge Company petitioned the Circuit Court of Ohio county to condemn, for the purpose of constructing its bridge, twenty five feet of river front of the Ohio river, opposite the city of Wheeling, on what is known as the "Island," or "Zane's Island." The Belmont & Wheeling Bridge Company, an ancient corporation owning and operating a bridge between said island and the city of Wheeling, was the owner of this strip of twenty five feet, and, as condemnee, resisted the application to condemn, and the hearing was set for the 21st day of February, 1890.

The defendant company filed seven pleas, of which three— the fifth, sixth, and seventh—were on motion rejected, and have been incorporated in the record, and made the subject of exception.    These three rejected pleas are as follows:

Plea No. 5 : "In the Circuit Court of Ohio county—ss : *Wheeling Bridge Company* vs. *The Wheeling and Belmont Bridge Company.*    Proceeding to condemn land.    The said defendant, for further plea, says that it is a corporation organized under a charter granted by the State of Virginia, for the purpose of authorizing the defendant to erect a bridge across the Ohio river at or near the town of Wheeling, and that, in pursuance of said charter, and the powers and authorities from time to time granted and confirmed by the said legislature of the said State, the said defendant erected, and has for many years maintained, for public use, in consideration of the tolls lawfully enacted by the said defendant, a wire suspension bridge, extending from the eastern shore of the said river at Tenth street, in the said town or city of Wheeling, to the eastern shore of Zane's or Wheeling island, at Virginia street on said island.    And the said defendant says that, by the act of the said legislature, the said defendant was empowered to purchase, acquire, and hold all ferry rights and privileges between Zane's island and the main Virginia shore, at the city of Wheeling.    And the said defendant says, that in the year 1847 there was, and for many years had been, at the city of Wheeling, between Zane's island and the main Virginia shore, a ferry duly and lawfully maintained and owned by Henry Moore, trustee, Daniel Zane and Daniel C. List, trustee, together with the rights and privileges by law incident thereto ; and that on the 20th day of September, in the year 1847, the said defendant, under the authority aforesaid, acquired by purchase and conveyance from the said Henry Moore, trustee, Daniel Zane, and Daniel C. List, trustee, the said ferry, and the said rights and privileges; and that the said defendant has since owned and enjoyed the same.    And the said defendant says that its said toll-bridge was erected, and has since been maintained, substantially in the location of said ferry, and that the said defendant, by maintaining its said bridge for the use of the

public as aforesaid, and otherwise, has maintained in full force and vigor the rights and privileges appertaining to the said ferry as aforesaid. And the said defendant says that, at the time when it acquired the said ferry, and the said rights and privileges, as aforesaid, one of the rights, franchises, and privileges incident to the said ferry and the ownership thereof, was the exclusive right to transport persons, animals, and vehicles across the said Ohio river, within the limits of one half mile of said ferry, and that the said defendant acquired the said last-mentioned right, franchise, and privilege, by means of the said conveyance from the said Henry Moore, trustee, and has since owned and still owns the same. And the said defendant says that the said bridge, so proposed to be built by the petitioner, as in the said petition set forth, is intended by the petitioner to be located, and the whole of the said parcel of land in the petition mentioned and proposed to be condemned is situated, within a half mile of the location of the said ferry, and of the location of the said defendant's bridge. And the said defendant says that the said bridge so proposed to be built by the said petitioner, as aforesaid, is intended by the petitioner to be a bridge for the transportation of persons, animals, and vehicles across the said river. And so the said defendant says that the said petitioner has no right to build the said bridge so proposed to be built by it, as aforesaid, and that its proceedings to condemn the said parcel of land of the said defendant is without authority of law. And this the said defendant is ready to verify. Wherefore, it prays judgment whether the said petitioner ought to have or maintain its proceeding against it. A. J. CLARKE and HENRY M. RUSSELL, Attorneys for Defendant. "

Plea No. 6: "In the Circuit Court of Ohio county—ss : *Wheeling Bridge Company* vs. *The Wheeling and Belmont Bridge Company.* Proceeding to condemn land. The said defendant for further plea says, that it is a corporation organized under a charter granted by the State of Virginia for the purpose of authorizing the defendant to erect a bridge across the Ohio river, at or near the town of Wheeling, and that, in pursuance of the said charter, and the

powers and authorities.from time to time granted and confirmed by the legislature of the said State, the said defendant erected, and has for many years maintained, for public use, in consideration of the tolls lawfully exacted by said defendant, a wire suspension bridge, extending from the eastern shore of the said river at Tenth street, in the said town or city of Wheeling, to the eastern shore of Zane's or Wheeling island, at Virginia street on said island. And the said defendant says, that by the acts of the said legislature the said defendant was empowered to purchase, acquire and hold all ferry-rights and privileges between Zane's island and the main Virginia shore, at the city of Wheeling. And the said defendant says, that in the year 1847 there was, and for many years had been, at the city of Wheeling, between Zane's island and the main Virginia shore, a ferry duly and lawfully maintained and owned by Henry Moore, trustee, Daniel Zane, Daniel C. List, trustee, together with the rights and privileges by law incident thereto; and that, on the 20th day of September, in the year 1847, the said defendant, under the authority aforesaid acquired by purchase and conveyance from the said Henry Moore, trustee, Daniel Zane and Daniel C. List, trustee, the said ferry, and the said rights and privileges, and that the defendant has since owned and enjoyed the same. And the said defendant says, that its said toll-bridge was erected, and has since been maintained, substantially in the location of the said ferry, and that the said defendant, by maintaining its said bridge for the use of the public as aforesaid, and otherwise, has maintained in full force and vigor the rights and privileges appertaining to the said ferry as aforesaid. And the said defendant says, that, at the time when it acquired the said rights and privileges, as aforesaid, one of the rights, franchises, and privileges incident to the said ferry and the ownership thereof, was the exclusive right to transport persons, animals, and vehicles across the said Ohio river, within the limits of one half mile of said ferry, and that the said defendant acquired the said last-mentioned right, franchise, and privilege by means of the said conveyance from the said Henry Moore, trustee, Daniel Zane, and Daniel C. List, trustee, and has

since owned and still owns the same. And the said defendant says, that the said bridge so proposed to be built by the petitioner, as in the petition set forth, is intended by the petitioner to be located, and the whole of the said parcel of land in the petition mentioned and proposed to be condemned is situated within a half mile of the location of the said ferry, and of the location of the said defendant's bridge. And the said defendant says, that the said bridge so proposed to be built by the said petitioner, as aforesaid, is intended by the petitioner to be a bridge for the transportation of persons, animals, and vehicles across the said river. And so the said defendant says, that out of the said powers and authorities granted to the said defendant, as aforesaid, and the acquisition by the said defendant of the said ferry, and the said rights, privileges, and franchises, arose a contract between the said State of Virginia and the said defendant that the said defendant should have and enjoy during its chartered existence the exclusive privilege of transporting persons, animals, and vehicles, across the Ohio river, at all points within a half mile of the location of the said ferry ; and that, upon the formation of the State of West Virginia, said State, in the ownership of the Ohio river and its shores, became a party to the said contract, and bound by the same. Yet, the said defendant says, that the legislature of this State, not regarding the obligation of the said contract, on the 25th day of March, in the year 1882, passed an act which provided that corporations might be formed for the purpose, and that, when so formed, they might erect and maintain toll-bridges over the Ohio river, for the transportation of persons, vehicles, and other things over the said river, and that no ferry privileges or franchises should preclude the erection of such bridges, or entitle the owner of such privileges or franchises to damages in case of any such bridge. And the said defendant says, that the only authority of law which the said petitioner has or pretends to have for the erection of a bridge so to be erected and maintained by it, as aforesaid, is the said act of the legislature of West Virginia. And the said defendant says, that the said last-mentioned act is unconstitutional and void, as impairing, and in so

far as the same impairs, the obligation of the said contract between the said States of Virginia and West Virginia, and the said defendant. And so the defendant says, that the said petitioner has no right to build the said bridge so proposed to be built by it, as aforesaid, and that its proceeding to condemn the said parcel of land of the said defendant is without authority of law. Wherefore it prays judgment whether the said petitioner ought to have or maintain its proceeding against it. A. J. CLARKE and HENRY M. RUSSELL, Attorneys for Defendant."

Plea No. 7: "In the Circuit Court of Ohio county—ss: *Wheeling Bridge Company* vs. *The Wheeling and Belmont Bridge Company.* Proceeding to condemn land. The said defendant for further plea says, that it is a corporation organized under a charter granted by the state of Virginia, for the purpose of authorizing the defendant to erect a bridge across the Ohio river, at or near the town of Wheeling, and that, in pursuance of the said charter, and the powers and authorities from time to time granted and confirmed by the legislature of the said state, the said defendant erected, and has for many years maintained, for public use, in consideration of the tolls lawfully exacted by said defendant, a wire suspension bridge, extending from the eastern shore of the said river at Tenth street, in the said town or city of Wheeling, to the eastern shore of Zane's or Wheeling island, at Virginia street on said island. And the said defendant says, that out of the said charter, and the said powers and authorities so granted and confirmed, and the erection of the said bridge in pursuance thereof, arose a contract between the said State of Virginia and the said defendant, that the said state would not, during the chartered existence of the said defendant, authorize or permit any other bridge for the transportation of persons, animals, or vehicles across the Ohio river, so near to the said bridge of the said defendant as seriously to impair the value of the defendant's bridge, by the diversion therefrom of the travel and tolls which would otherwise naturally flow in that direction. And the said defendant says, that upon the formation of the State of West Virginia this state, as the successor of the State of Virginia in the ownership of the

Ohio river and its shores, became a party to the said contract. And the said defendant says, that the bridge so proposed to be erected, as aforesaid, by the said petitioner is intended to be a bridge for the transportation for toll of persons, animals and vehicles over the said Ohio river, and that the proposed location thereof and the said parcel of land described in the petition are within five hundred feet of the said bridge of the defendant, and so near the latter that the erection and maintenance of the said proposed bridge of the petitioner will necessarily seriously impair the value of the defendant's bridge by the diversion therefrom of the travel and tolls, which would otherwise naturally flow in that direction. And the defendant says, that there is no authority of law for the erection of any such bridge by the said petitioner in the said proposed location, except a certain pretended authority sought to be derived from a certain public act of the legislature of the state of West Virginia. And the said defendant says, that the said public acts of the said legislature of West Virginia, in so far as they purport to authorize the said defendant to erect or maintain the said bridge in the said proposed location, impair the obligation of the said contract, and are, as well as the supposed authority sought to be derived from them, unconstitutional and void. And this the said defendant is ready verify. Wherefore the said defendant prays judgment whether the said petitioner ought to have or maintain the said proceeding against it. A. J. CLARKE and HENRY M. RUSSELL, Attorneys for Defendant.

A jury was impanelled, and upon the defendant's four pleas, upon which issue was joined, they found separately for the plaintiff, and then rendered a general verdict as follows: "We, the jury, find for the petitioner, the Wheeling Bridge Company, on each and all of the issues joined." Thereupon judgment was rendered, that there was necessity to condemn the property demanded, and a commission was appointed to assess a just compensation to the owners. Proceedings were suspended, however, until a writ of error could be prosecuted to this Court.

The first question which arises in this case is upon the rejected pleas. These pleas set up in the defendant com-

pany an exclusive right of transporting passengers and freight whether by a toll or a free bridge acrossthe Ohio, at any and all points within one half mile of their own bridge. The question to be considered, therefore, is whether they (the defendant company) did possess any such monopoly of travel and transportation. It is conceded, in the argument and briefs of counsel, that Zane's ferry, which the defendant purchased, was licensed at an early day, when no such exclusive privilege as that claimed was attached to the franchise. Subsequently (1840) the general assembly of Virginia by general law and gratuitously without further consideration from established ferries, and as a bounty or subsidy to them, prohibited the County Courts from licensing a ferry within one half mile in a direct line from an established ferry. This subsidy, so far as it favored existing ferries, was purely gratuitous, and as much subject to withdrawal by repeal as any other act of the legislature designed to encourage a particular branch of industry or improvement. Zane as the recipient of a gratuitous bounty could not complain, if the same legislative wisdom, which conferred, should upon reasons of public policy withdraw it. The Wheeling & Belmont Bridge Company was authorized (1847) to purchase his rights, privileges and franchises. But such purchase could not enlarge or add to them. The idea, that such authority to purchase enlarges the estate of the vendor, and converts an incidental bounty into a vested right, can not be successfully maintained. None of the authorities relied upon tend to sustain such a proposition, nor even bear upon it.

The only new grant, which entered into the charter of 1847, was the right to purchase certain ferry-privileges; and the authorities relied upon by the counsel for plaintiff in error go to the point, that this grant was a contract and irrevocable; but they do not throw any light upon the question, whether this grant did or could enlarge such ferry privileges, or render them any more extensive than they were in the hands of the original licensee. We hold that the grant could have no such effect, and that, as the feature of a monopoly so far as it pertained to Zane's ferry was no part of this original license or charter, but only an incident

derived from a general statute passed long after the date of this franchise, such statute, so far as his rights were concerned, was subject to repeal by the legislature, and the monopolistic feature liable to revocation by ordinary legislation; and, being of this character in his hands, it remained the same in the hands of his vendee, the Wheeling & Belmont Bridge Company. See *Mason* v. *Bridge Co.*, 17 W. Va. 396 and *Somerville* v. *Wimbish* 7 Gratt. 205.

The legislature, in 1882, having passed an act repealing the clause in the statute regarding the establishing of ferries which in *Mason* v. *Bridge Co.*, 17 W. Va., had been construed to prohibit the building of a competing bridge within onehalf mile of an established ferry, it follows that the plaintiff in error can not complain that a new bridge is to be built over the Ohio within onehalf mile of its own structure; and its pleas putting that matter in issue, as a question of fact were properly rejected.

We come now to consider the instructions. A general view of the opinion of the court with reference to the relative rights and duties of improvement-companies, as to the exercise of the rights of condemnation and eminent domain as between themselves, will greatly facilitate our discussion of the instructions. All property purchased by a corporation may be presumed to be of some use to it present or prospective, otherwise it would not have been purchased; and all such property may be put to some use, however unimportant or temporary. But to say that every trivial use, to which a small portion of its property may be put, is to exempt the corporation from its proper subordination to the public welfare and to enable it to arrest the progress of other public improvements, is to place in corporate hands a most dangerous power, to restrict competition and encourage monopoly. The true rule, as it seems to me, is to require corporate property to be held liable to that power of eminent domain, which it is itself clothed with delegated authority to exercise, subject in the main to like conditions and restrictions.

The condemnor in this case asks only twenty five feet of the condemnee; and it is quite apparent, that, were such condemnation demanded of a private individual no court

would hesitate to grant it upon compliance with the statute. A similar compliance on the part of the defendant company ought to have been yielded. If a rule were established that any trivial use or mere convenience not necessary to the exercise and enjoyment of the public franchise could be interposed by one improvement company to head off a competing company and arrest its progress, then these corporations, especially under the more than liberal grants of power which the laws of West Virginia confer, would be encouraged to hedge themselves around with all accessible sites, locations, routes and properties necessary to cut off competition. Our law (Code, c. 52, s. 7) provides as follows: "Lands owned by one internal improvement company, but not necessary for the enjoyment of its franchise, may be taken for the purposes of another internal improvement company, in the same manner as land owned by others, but, when such lands are claimed to be necessary to the enjoyment of such franchise, the court appointing such freeholders (to ascertain a just compensation) may, before proceeding further, determine, upon a report of such freeholders or otherwise, whether such necessity exists." In the leading case of *B. & O. R'd. Co.* v. *P. W. & Ky. Co.*, reported in 17 W. Va., it is said, on page 856: "The courts will take care to see that one railroad company is not materially injured for the benefit of another, and, where no such material injury will result, the onward march of improvement demands that a great work of internal improvement shall not be impeded by imaginary injury to another corporation."

The instructions granted at the prayer of the condemnee were as follows:

"(1) When one corporation, formed for the purpose of prosecuting a work of internal improvement, such as the plaintiff company, seeks to take by condemnation, property belonging to another similar corporation such as the defendant bridge company, the plaintiff must show that the property to be taken is necessary to be used by it in the prosecution of its undertaking. But if, in such case, it appear that there is a like necessity for the defendant to use the property in the prosecution or conduct of its under-

taking, then the possession of the defendant will prevail, and it will be allowed to retain the property, notwithstanding it may be necessary for the plaintiff's undertaking. If, therefore, the jury find from the evidence that any part of the defendant's property sought to be taken in this proceeding is necessary for the defendant to use in the maintaining and proper securing of its bridge, they shall, as to such part, find for the defendant.

"(2) If the plaintiff succeeds in this proceeding, in condemning any portion of the defendant's land, the plaintiff will acquire the absolute, entire, and exclusive ownership of the portion so condemned, and the defendant will thereafter have no rights of any kind in such portion, and no right to use the same for maintaining thereon its pier, its riprap, or for passing to and from the same from Ohio street, or for any other purpose. * * *

"(10) The defendant is not bound for the accommodation of the plaintiff to remove its guy pier or riprap to some other place on its own or other land, and the jury must determine the question of the necessity to the defendant of the land proposed to be taken, without regard to the possibility of such removal."

The instructions offered by the condemnee, and rejected, were as follows:

"(3) In the absence of bad faith a corporation formed for the prosecution of a work of internal improvement, such as the defendant, is permitted by the law to be the judge of the necessity for its taking or retaining property for its use. If, therefore, the jury find from the evidence that the defendant, in good faith, has used and is using for its guy pier and riprap a portion of the property here sought to be condemned, then the jury should also find that such portion is necessary to the proper exercise of the franchise of the defendant, and should find for the defendant as to such portion.

"(4) In the absence of bad faith a corporation formed for the prosecution of a work of internal improvement, such as the defendant, is permitted by the law to be the judge of the necessity for its taking or retaining property for its use. If, therefore, the jury find from the evidence that the de-

fendant, in good faith, has used and is using for piling lumber, used by it in making repairs to its bridge, a portion of the property here sought to be condemned, then the jury should also find that such portion is necessary to the proper exercise of the franchise of the defendant, and should find for the defendant as to such portion.

"(5) Where it is said that property must be necessary for the proper exercise of the franchise of the defendant in order to be retained by it against the plaintiff's claim in this proceeding, it is not intended that the land must be so absolutely necessary as that, without it, it would be altogether impossible for the defendant to maintain or use its bridge, but only that the land is such that, in the exercise of good faith or reasonable discretion, it is proper for the defendant to use the property in the course of the exercise of its franchise. If, therefore, the jury find from the evidence that a portion of the property sought to be taken in this proceeding is, in good faith, in use by the defendant for its guy-pier, or for its riprap, and if they further find that use is such as it is proper for the defendant in the exercise of a reasonable discretion to make of such portion in the course of the exercise of its franchise, then the jury should find for the defendant as to such portion.

"(6) When it is said that property must be necessary for the proper exercise of the franchise of the defendant, in order to be retained by it against the plaintiff's claim in this proceeding, it is not intended that the land must be so absolutely necessary as that, without it, it would be altogether impossible for the defendant to maintain or use its bridge, but only that the land is such that, in the exercise, in good faith, of a reasonable discretion, it is proper for the defendant to use the property in the course of the exercise of its franchise. If, therefore, the jury find from the evidence that a portion of the property sought to be taken in this proceeding is, in good faith, in use by the defendant for piling lumber used by it in making repairs to its bridge, and if they further find that use is such as it is proper for the defendant, in the exercise of a reasonable discretion, to make of such portion in the course of the exercise of its franchise, then the jury should find for the defendant as to such portion.

"(7) The defendant is not bound, for the accommodation of the plaintiff, to provide itself with other space, either upon its own or other lands, for piling the lumber which it may now pile on the land proposed to be taken. If, therefore, the jury find from the evidence that the defendant uses for piling lumber used in repairing its bridge a portion of the land sought to be taken in this proceeding, the jury shall not, in determining the necessity of that portion to the defendant, consider the possibility of the defendant's providing itself with other space, either upon its own or other land, for that use, but shall determine the question of necessity as though no other space than that now used could be obtained for the purpose.

"(8) In order that the defendant may retain a portion of the property sought to be taken in this proceeding, it is not requisite that such part should be in actual use by the defendant, if it is necessary to the proper maintaining or securing of its bridge. If, therefore, the jury find from the evidence that a portion thereof, ten feet or less in width, on all sides of the defendant's guy-pier, is necessary to the proper maintaining of such guy-pier, and of the defendant's bridge, then, as to such portion, they shall find for the defendant, although the whole of the said portion may not be occupied by the defendant's riprap.

"(9) If the jury find from the evidence that any part of the defendant's guy-pier or riprap is on the land sought to be taken in this proceeding, and, if they further find from the evidence that the said guy-pier and riprap are actually and in good faith in use by the defendant, and that they are necessary to the proper exercise of the franchise of the defendant, then the jury shall find for the defendant as to the whole parcel sought to be taken."

Without going into detailed analysis and consideration of these several instructions it will be seen, that tested by the general principles, which we have laid down, all refused to the defendant below were properly refused except the eighth. This instruction, as it seems to me, propounds the law correctly and was improperly refused, and, if I could see any reason to infer that the defendant was injured by its rejection, I would send the case back for a new

inquest, with directions to grant this instruction. It is quite clear, that the petitioner could not condemn and thus became possessed in fee of any part of the defendant's riprapping, which "was necessary to the proper maintaining of the defendant's bridge." And, if the jury had not directly passed upon this very point, as a question of fact, I should be of opinion that the case should go back for reconsideration and a new trial. Upon an examination of the record, however, it will be found that this very matter, the hypothesis which supports the instruction, was submitted to the jury in the fourth plea as follows: "And the said defendant says, that the said portion of the said parcel sought to be condemned, which is so occupied by the said pier, and the said supports, is necessary to the proper exercise of the franchise of the defendant. And this the said defendant is ready to verify." And upon the issue made up on this allegation, the jury found for the plaintiff. It must be inferred, therefore, that they would not have found, and did not "find, from the evidence," that any portion of defendant's riprapping, which the plaintiff proposed to condemn, was necessary to the proper exercise of the franchise of the defendant. It is, therefore, quite plain from the record, that the condemnee was not injured by the refusal to give this instruction, because the jury have found that the premises, from which the conclusion was to follow, were not true as a matter of fact.

So far as the motion to exclude the condemnor's evidence is concerned, it was properly overruled, since the court could not have sustained it without usurping the functions of the jury. And the same may be said of the motion for a new trial on the ground that the verdict was contrary to the evidence.

It only remains to consider whether the court below erred in refusing to permit certain interrogatories to be propounded to the jury. These interrogatories were the following:

"(1) Does the strip of land proposed to be taken in these proceedings include any part of the defendant's guy-pier?

"(2) Does the strip of land proposed to be taken include any part of the defendant's riprap? ·

"(3) If any, how much of the defendant's guy-pier is on the strip of land proposed to be taken in these proceedings?

"(4) If any, how much of the defendant's riprap is on the strip of land proposed to be taken in these proceedings?

"(5) Were the defendant's guy-pier and riprap in good faith placed in their present position before the plaintiff's project of building a bridge was known?

"(6) Is the defendant's use of its land for a guy-pier and riprap a use which it is reasonably proper for the defendant, in exercising its franchise, to make of the land occupied by those structures?"

I do not think there was any error in refusing to permit these interrogatories to be propounded. The matter was within the discretion of the Circuit Court, and we think it was properly exercised. See Code, c. 131, s. 5, and *Kerr* v. *Lunsford*, 31 W. Va. 659 (8 S. E. Rep. 493). If every one of these interrogatories had been answered in the defendant's favor, they ought not to have affected the general verdict, because the special facts so found would have been entirely consistent with the general verdict. This will manifestly appear by considering the first, second, third, fourth, and fifth of these questions, in connection with the quotation from the opinion of the Court in *B. & O R'd Co.* v. *P. W. & K'y Co.*, 17 W. Va., heretofore referred to. It is quite manifest, therefore, that even if the twenty five feet petitioned for had included portions of the pier and riprapping of defendant, nevertheless they might be condemned, provided such portions were not necessary to the exercise or enjoyment of its franchise by the defendant company. In regard to the sixth interrogatory, a comparison of its language with that of our statute, as above quoted, and with the language which I have quoted from *B. & O. R'd Co.* v. *P. W. & K'y Co.*, 17 W. Va., will show that an affirmative answer, such as would have been most favorable to the defendant, ought not to have affected the general verdict, and indeed would not have been inconsistent therewith. The pivotal question is not whether the actual use of property petitioned for "is reasonably proper," but whether such actual use is "necessary" to the enjoyment of its franchise. This is the test proposed by our

statute and insisted upon by a former decision of this Court.

Upon the whole, therefore, having failed to discover such error as ought to reverse the decision and judgment of the Court below, I am of opinion that the same is not erroneous.

It will be observed, that we have not considered the motion to dismiss the writ of error. The reason is that counsel withdrew it, and all parties insisted upon a speedy decision of the question involved between these two important public improvements. We have, therefore, without committing ourselves upon any collateral questions, which might be supposed to be involved, decided to affirm the Court below.

AFFIRMED.