# JUNE TERM.

## WHEELING.

WHEELING B. & T. R'y Co. *v.* CAMDEN CONS. OIL CO.

Submitted June 6, 1891.—Decided June 13, 1891.

1. RAILROAD COMPANIES.

A railroad company chartered under the general law of the state may complete and operate a part of its railroad, and, as to the part so completed and operated, retain its corporate existence, franchise and powers. Chapter 54, § 66, Code (Ed. 1887.)

2. RAILROAD COMPANIES.

A railroad company organized under such general law may build and construct lateral and branch roads not exceeding fifty miles in length, and use and operate any part or portion of their main line and branch or branches when completed, the same as

though the whole of the proposed railroad were fully completed. Chapter 54, § 69, Code 1887.

3. RAILROAD COMPANIES.

Such branches may have, in part, a common stem leading from the main line—that is, there may be a branch from a branch—provided the limit as to length is not exceeded.

4. RAILROAD COMPANIES—CONDEMNATION OF LAND.

Under the provisions of the general law of this state, the filing of the map and profile of the location of the railroad in the office of the secretary of state, and in the office of the clerk of the county court of each county in which any part of the road is located, is not in law a condition precedent to the appointment of commissioners to ascertain a just compensation to the owners of the real estate proposed to be lawfully taken for the purpose of such road; but the circuit court may, in its discretion, require such map and profile, or such part as may be needed, to be filed or produced before appointing such commissioners.

5. RAILROAD COMPANIES—CONDEMNATION OF LAND.

The delivery of the certificate of incorporation of such company, or of a copy thereof properly certified, to the clerk of the county court for record in the county in which the principal office or place of business of such company is, is not a condition precedent to the proper and lawful exercise of the right to condemn.

*J. J. Jacob* and *H. M. Russell* for plaintiff in error, cited Acts 1881, c. 17, ss 32, 50; Gr. Brice 393, N. A.; Durham R. R. *v.* R. & D. R. R. 106 N. C. (10 S. E. Rep. 1041); 46 N. Y. 546; 1 Mor. Corp. § 323; 7 Metc. 83; 2 Gray 580; 100 Mass. 351; 6 W. Va. 397; 35 Barb. 373–381; 1 Stockt. 635; 16 N. J. Eq. 419; 62 Barb. 85; 61 Barb. 477; 18 Mich. 459; 61 Vt. 1; 11 Minn. 292; 1 Red. R. R. (64 Ed.) 405; 119 Mass. 174; 120 Mass. 352; 121 Mass. 286; 10 S. E. Rep. 405; 17 W. Va. 812; 23 W. Va. 203; 13 Ill. 1; 21 Pa. St. 117; 23 Barb. 21; 27 Pa. St. 339; 1 All. 316; 36 Wis. 466.

*W. P. Hubbard* and *Ewing, Melvin & Riley* for defendants in error, cited 9 Kan. 647; Id. 137; 32 W. Va. 98; 107 Ind. 320; 113 Ind. 343; 5 Hun. 201, 205; 107 Pa. St. 548, 558; 16 Ohio St. 397, 398; Wood R'y Law, § 239; 61 Cal. 90; 100 Ill. 110; 66 Mo. 229, 255; 99 Pa. St. 155; 107 Pa. St. 548, 557, 558; 115 Pa. St. 166, 177; 77 N. Y. 248, 267; 4 Ohio St. 327; 46 N. Y. 546, 553.

Holt, Judge:

This is a writ of error to the judgment and rulings of the Circuit Court of Ohio County in a proceeding by way of petition on the part of the railway company to condemn certain real estate belonging to the Camden Consolidated Oil Company. The constitution of the State of West Virginia requires that "the legislature shall provide for the organization of all corporations hereafter to be created by general laws uniform as to the class to which they relate; but no corporation shall be created by special law." Const. W. Va. Art. XI, § 1; Code W. Va. (1887) p. 40. In pursuance of this requirement, the legislature has from time to time enacted the law as we now find it in chapters 52–55, pp. 484–559, Code W. Va. (1887). Under this law the The Wheeling Bridge and Terminal Railway Company became incorporated and received its charter on the 6th day of March, 1882, but by the name of the "Wheeling & Harrisburg Railway Company of West Virginia." On the 12th day of September, 1889, the name was changed to the present one. The railroad which this corporation proposed to build commences at the west corporation line of the city of Wheeling, in Ohio county, on the line between the state of Ohio and the state of West Virginia, and is to run thence by the most practicable route to a point in Marshall county, at or near where the line between the state of West Virginia and the state of Pennsylvania is crossed by Wheeling creek.

The city of Wheeling, by ordinance of its council passed February 28, 1888, which took effect May 28, 1888, gave its consent that this railway company might construct, maintain and operate a branch railroad for terminal and connecting tracks and facilities in the city of Wheeling, subject to certain restrictions and conditions which need not here be mentioned; and on the 18th day of January, 1889, the city passed another ordinance on the subject. This railroad company has already built along its main line a double-track railroad bridge across the Ohio river, two double track tunnels—one five hundred and fifty seven feet long; the other one thousand two hundred and three feet long—to a point called the "Peninsula," in the

valley of Wheeling creek, and a branch from that point down Wheeling creek, on the south side, thence through Chapline hill, by a double-track tunnel two thousand, four hundred and sixty feet long, to the lower end of the city of Wheeling, on the Ohio river. The railway company has found it necessary for its legitimate purpose to have a freight station near the northern portal of its Chapline-Hill tunnel; but there is no room on the south side of Wheeling creek. Therefore it is compelled to build a switch or branch across Wheeling creek to the north side for that purpose; and this proceeding has been instituted for the condemnation of the land in question, lying on the north side, belonging to the Camden Consolidated Oil Company.

The oil company appeared in the court below, and resisted such condemnation, putting its objections in the form of seven common-law pleas, which it tendered and offered to file, to each of which the plaintiff objected. The court rejected pleas No's 1, 2, 4, and 5, but permitted No's 3, 6, and 7 to be filed, on which issues were made up, and tried by a jury. During the trial the court gave at the instance of plaintiff, and against the objection of defendant, seven several instructions. The defendant then moved that the jury be directed to find in writing upon three several questions of fact written out for the purpose (see Code, c. 131, s. 5;) but the court refused, and, the case being submitted to the jury, they returned for plaintiff a general verdict on the issues joined, also a special finding for plaintiff on each of the issues joined on the three pleas filed. Thereupon the defendant moved the court to set aside the verdict, and grant it a new trial; but the court overruled the motion and proceeded to appoint five commissioners, in accordance with the Code, c. 42, s. 10, to ascertain what would be a just compensation to defendant for each parcel of real estate proposed to be taken.

To all these rulings against defendant it excepted, the evidence being certified, and the cause is now here for review.

The serious question intended to be presented by this record grows out of the rejection of pleas Nos. 1 and 2.

Section 65, c. 54, of the Code, of 1887 reads : "Every such corporation shall, within a reasonable time after its railroad is located, cause to be made a map and profile thereof, with the names of the owners of the lands through which it runs, and of the noted places along the same stated thereon, and file the same in the office of the secretary of state, and in the office of the clerk of the country court of each county in which any part of said road is located." Plea No. 1 avers, in substance, that plaintiff had failed to comply with this section as to its main line, although a portion of such road had been located for the space of one year before the beginning of this proceeding. Plea No. 2 makes the same averment as to the lateral or branch railroad mentioned in plaintiff's petition.

Is the filing of such map and profile of location a condition precedent to the right to condemn land ? It is not in express terms made a condition precedent to the exercise of such right, and, if it be such, it must arise from an implication reasonably necessary. By chapter 54, § 34, of the Code of 1887 when the certificate of incorporation shall have been issued and delivered as provided, "the corporators named in the articles of incorporation recited therein, and who have signed the same, and their successors and assigns shall from the date of said certificate become and be a body corporate, as therein stated, and as such authorized to proceed to carry into effect the object set forth in said articles of incorporation in accordance with the provisions of this chapter." Chapter 42 of the Code confers upon railroad companies, among others, the right to take private property for the construction of their roads, and prescribes the prerequisites and the method of procedure, and among them is the requirement that the application be in writing, "describing with reasonable certainty the real estate proposed to be taken ;" so that to give a particular and certain description to the owner of the land proposed to be taken can not be the sole purpose of requiring the map and profile to be filed, but rather that its location as a whole may be accessible to the public, and a description of the extent and limits of the real estate owned by the railway company may be preserved. And the court below has the

right to require that the description of the land proposed to be taken be made certain and definite, and, if deemed necessary to that end, to require a map and profile of the location, as far as it has been made, to be filed or produced; for the law contemplates that construction of the road may be commenced, and therefore, if necessary, condemnation of the land may be had, before a final location of the whole road, as intended and set out, has been made; for section 69 of chapter 54 provides that "any railroad company organized under this chaper may build and construct lateral and branch roads or tramways, and of any guage whatever, not exceeding fifty miles in length; and it may build planes and gravity roads, use and operate any part or portion of their main line and branch or branches, when completed, the same as though the whole of their said proposed railway was fully completed." So, again, our statute contemplates, in fact requires, in this particular, as a necessary prerequisite to the right of condemnation, that the railroad corporation shall acquire such real estate by purchase, if it can agree with the owners. Section 48, c. 54, p. 518, Code. And in this instance the railway company appears to have acquired its real estate for the most part in that way, and to have already occupied such part with the bridges, tunnels and road-ways of a railway well nigh to that extent completed. Our lack and need of railroads is thought to be great; hence our general law upon the subject is broad and liberal, perhaps beyond precedent.

The railway company, plaintiff in this case, has been unable to agree with the defendant for the purchase of its part of the real estate needed. Can it be that under such a statute the defendant can interpose as a plea in bar to the awarding of a commission of condemnation the fact that the map and profile of location has not been filed as required by law. How are we to say that one year is a reasonable time in this particular case? The evidence shows that the difficulties and perplexities of location, as well as of construction, have been great to an extraordinary degree—so much so that the plaintiff has had to feel its way, as it were, with great caution and circumspection—and it might have been highly inconvenient and

embarrassing to commit itself at once to a definite location throughout. The main line, with its bridges and tunnels and the rest of its track, is about complete from the Ohio state line into the valley of Wheeling creek; and it seems to be the purpose of the company to stop there in the construction of the main line until the more pressing need of branches and terminals in the city is supplied. The branch that runs down Wheeling creek, on the south side, by the land in question, and thence through the Chapline-Hill tunnel to Lower Wheeling, is well nigh complete; certainly, far enough to show its location. There is no complaint that the petition does not designate with sufficient certainty the real estate proposed to be taken. If there had been for the purpose of this proceeding any need of such map and profile, the court below could and would have required its production; but we do not think that the failure to file it in the proper offices could be pleaded in bar of the right to have the commission awarded; and therefore we think that pleas Nos. 1 and 2 were properly rejected. Besides, it appears that this land is needed only for a station and a switch to connect it with the branch on the south side of the creek.

Plea No. 4 avers that the land sought to be condemned was so situated that it could not be used until the street had first been occupied and that no permission to occupy the street had been obtained. This plea was properly rejected. The city of Wheeling may give its consent; but, if this property can not be obtained, it is not worth while to ask such consent. If the property is obtained, and no consent by the city be given, the property-owner is not hurt, because the land condemned would then revert to the original owner. Code 54, s. 69a, 9. The company can not do everything at once; and if each condemnation or permission on the part of the city is made a condition precedent to every other one, then no property could be condemned at all. Besides, that is a matter between the city and the railway company, and does not directly enter into this controversy.

Plea No. 5 avers that the railway company did not, within three months after its certificate of incorporation

had been issued, cause the same or a certified copy thereof to be delivered for record to the clerk of the county court of Ohio county, in which its principal office and place of business is kept, as required by Code, c. 54, s. 20. This plea also was properly rejected; such recordation, for the reasons given in considering pleas Nos. 1 and 2, not being a condition precedent to the right to condemn, and for the additional reason that the same section provides that, "if such company fail therein, it shall be fined not exceeding one thousand dollars." *Lumber Co.* v. *Thomas,* 33 W. Va. 566 (11 S. E. Rep. 37).

Plea No. 6 "denies that the railroad, for the purposes for which the land is sought to be condemned, is a branch or lateral road, as stated in the petition." This plea is obscure and uncertain in meaning; but, taking it to aver with sufficient certainty what defendant claims it is intended to aver—that it is a branch of a branch, and therefore not a branch of a main line—it should have been rejected as immaterial; for nothing is clearer under our statute than that the railway company may legally construct a branch of a branch, or that two branches may have a common stem leading into the main line, provided neither exceeds fifty miles in length from such main line.

Plea No. 7 alleges, in brief, that the plaintiff has abandoned the line which it was chartered to build, and has begun to build an entirely different line, for which it sought to condemn the property in controversy, without authority of law. Plea No. 3 avers that the said parcels of land in said petition mentioned, and sought to be condemned, are not, nor is either of them, necessary for the purposes of the petitioner's railroad.

These pleas, Nos. 3, 6, and 7, were admitted, issues were made and joined thereon, and the jury found generally for the plaintiff, and specifically on each one of these three pleas. It was proved that the road along the main line from the west bank of the Ohio river to a point in the Wheeling creek valley, called the "Peninsula," had been built, and there the company proposed to stop until, by the building of a branch line down Wheeling creek, it had made terminal facilities for the city of Wheeling; therefore it was not

material to this inquiry where or how the main line was to run on from that point east, and it was not error to exclude such evidence.

Again, the chief engineer of the railway company was asked by plaintiff why the work had been mainly done upon the line from the western boundary of the state to the peninsula, and from the peninsula, with the creek, southward. To this question defendant objected, but its objection was overruled. The answer was material under plea No. 7, as tending to show that the further extension of the main line was not abandoned, but only, for the reasons given, deferred until the terminal facilities in the city of Wheeling were shown to be practicable by actual construction, and the road thus put upon a solid and paying basis. It also tended to show that the one was a part of the main line, and the other going down the creek was a branch.

It is admitted by counsel that all the instructions given to the jury do not appear in the record; therefore this Court can not say to what extent, if any, the instructions given and set out in the record were qualified by those given, but not set out. Seven instructions were on motion of plaintiff, and against the objection of the defendant, given to the jury, which are a part of this record, and are as follows:

"(1) If the jury believe from the evidence that the petitioner built and constructed its main line of railroad as designated and contemplated by its charter from the western boundary of the city of Wheeling to a point on the peninsula, it had and has the right to construct a branch or lateral line of railroad connecting with the main line at such point; and this, although the jury may further believe from the evidence that it ceased further work on the main line, and abandoned all intention of building and constructing further in an easterly direction, or towards the Pennsylvania state line.

"(2) If the jury find from the evidence that the line of railroad constructed from the Ohio river near the Top mill to the peninsula is a portion of the main line of petitioner's railroad, as contemplated by its charter, they are instructed that the length of the line connecting with such main line at the peninsula, and running thence southwardly, is not

decisive of the question whether such second line is or is not a branch or lateral road.   Neither length nor direction enters into the definition of a 'branch or lateral' railroad. The only limit in this state as to length is the statutory one of fifty miles.

"(3) If the jury find from the evidence that any substantial portion of the main line of the railroad contemplated by the charter of the Wheeling & Harrisburg Railroad Company has been built or constructed by the petitioner, their verdict should be in its favor upon the issue raised by the 7th plea.

"(4) If the jury find from the evidence that so much of the petitioner's railroad as has been constructed from the Ohio river near the Top mill to a point on the peninsula is a portion of the main line of such railroad, as designated and contemplated by the charter of the Wheeling & Harrisburg Railroad Company, then their verdict should be for the petitioner, the Wheeling Bridge and Terminal Railway Company, on the issue presented by the 7th plea filed by the defendant.

"(5) Even if the jury should believe from the evidence that so much of the petitioner's railroad as crosses Wheeling creek near the Whitaker mill is a branch railroad of a branch railroad, this will not warrant a finding to that effect, or for the defendant, on the issue raised by the 6th plea of the defendant.

"(6) While it is incumbent on the petitioner to show by a preponderance of the evidence that a necessity exists for the taking of the property described in the petition, such necessity is not to be regarded and treated as an imperative, but a reasonable one, looking to the proper discharge by the petitioner of its duties to the public; and if the jury believe from the evidence that such a necessity exists, taking into consideration the present, and also the prospective, needs of the petitioner, within a reasonable time, and that it has not in this instance unreasonably exercised the discretion it possesses in locating its tracks, buildings etc., then the verdict should be in its favor upon the issue presented by the 3rd plea filed herein.

"(7) Railroad companies possess a large discretion as to

the location of their tracks and buildings; and this discretion is not to be controlled if it has not been exercised unreasonably. And in this case, even if the jury should believe that lands other than those in question might or could have been found and acquired suitable for the petitioner's purposes, that fact would constitute no defence or objection to the present claim."

In view of our statute on the subject, especially sections 66 and 69 of chapter 54, of the Code, instruction No. 1 propounds the law correctly as applicable to this proceeding; because under section 50, par. 9, of said chapter, plaintiff "has the right to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery, for such connections, constructions, transfer accommodation, and use of passengers, freights, and business interest, or which may be necessary for the construction or operation and repair of said railroad, its track, road-way, and machinery, for the purposes of that part of the main line and branch already built," and to condemn such land as may be necessary for such purposes, within the limits as to quantity and distance as are prescribed by statute.

The effect of the abandonment of construction of the residue of the main line in other respects need not be here discussed; it can not avail to defeat this proceeding. Instruction No. 2 states the law correctly as given by our statute, and has been already discussed. Instruction No. 3 has already been discussed, and is substantially correct. Instruction No. 4 is also correct for reasons already given. Instruction No. 5 was in effect the rejection of plea No. 6. Instructions Nos. 6 and 7 propound the law correctly.

Under section 5, c. 131, of the Code, the defendant moved the court to direct the jury to find in writing upon particular questions of fact, as follows: "(1) Is the line of road with which, at a point near Whitaker's mill, the road for which the property is sought connects, the main line of the petitioner? (2) Is the line of road with which, at a point near Whitaker's mill, the road for which the property sought connects, a branch or lateral road? (3) Is the line of road which crosses the defendant's property a branch or lateral road?" This the court refused to do, and prop-

erly, because, on motion of defendants, it had already directed the jury to find separate verdicts on the issues joined on the three pleas, in addition to a general verdict, and pleas Nos. 6 and 7 cover the same ground. *Wheeling Bridge Co.* v. *Wheeling & Belmont Bridge Co.*, 34 W. Va. 155 (11 S. E. Rep. 1009.)

In conclusion, did the court err in overruling defendant's motion for a new trial? The evidence in this case shows without contradiction in any essential particular, and by a clear and decided preponderance in all matters of inference, that this railway company, acting under our general law, has, at an expense of millions, built in good faith some three thousand feet of its road along its charter line from the west bank of the Ohio river to the peninsula, in the valley of Wheeling creek, made up for the most part of double-track bridges and double-track tunnels; that the financial success and public usefulness of the road, as a whole, depend almost entirely, as far as the facts proven now enable us to see, upon the feasibility of making by various branches what the experts call a "terminal system"—"a railroad funnel," one witness calls it—in and around the city of Wheeling, by which the raw material may be easily and abundantly brought in, and the manufactured products taken out; that the making of this terminal system was confronted with so great and so many physical difficulties, not to speak of difficulties of other kinds, that capitalists who were to furnish the money could only be convinced that the thing could be done by the doing of it; hence the expensive and difficult branch down Wheeling creek on the south side, and through Chapline hill by a long double-track tunnel, and hence the necessity of the land in question, in connection with contiguous tracts, above and below, already acquired for station and side tracks, for heavy freight, and for the switch leading from the branch line by bridge across the creek thereto. The evidence makes the necessity for taking it for this purpose palpably plain.

The defendant, apart from the question of filing map and profile and certificate of incorporation, resists the condemnation on two grounds: (1) It suggests a conjecture that

the plaintiff may never complete any more of its charter line ; that therefore its present branch line down the creek is not a branch in fact, but a part of the main line, perverted from its lawful course under the guise of a branch. (2) That this switch, driven across the creek as a physical necessity to reach the station and track-yard on the north side, is not a switch, but a branch in the guise of a switch, and that there can not be a branch of a branch, and therefore the making of it is without warrant of law, as if two branches could not lead back to the trunk along a common stem. The court below overruled this motion for a new trial, and, in pursuance of the statute, directed and appointed a commission to view, appraise and report. We think the merits on all material points are with the plaintiff, and therefore affirm.

AFFIRMED.