# CHARLESTON

### WILLIAMSPORT, NESSLE & MARTINSBURG RAILWAY CO. v. STANDARD LIME & STONE CO.

### Submitted February 23, 1915.. Decided March 16, 1915.

1. EMINENT DOMAIN—*Condemnation for Railroad Right of Way— Public Use—Burden of Proof.*
   Lands sought to be condemned for rights of way, by a duly organized railroad corporation, will be deemed and treated as intended for public use; and the burden of showing the contrary rests on him who asserts it. (p. 22).

2. CORPORATIONS—*Eminent Domain—Condemnation of Railroad Right of Way—Sufficiency of Evidence.*
   Evidence introduced to prove applicant's legal organization as a railroad corporation held to be sufficient, and that introduced to show intent to serve a purely private purpose held insufficient. (p. 22).

Error to Circuit Court, Berkeley County.

Proceedings by the Williamsport, Nessle & Martinsburg Railway Company against the Standard Lime & Stone Company. Judgment for plaintiff, and defendant brings error.

*Affirmed and remanded.*

*Brown & Brown, Faulkner & Walker* and *E. G. Baetjer,* for plaintiff in, error.

*Martin & Seibert, B. A. Richmond* and *N. C. Hubbard,* for defendant in error.

LYNCH, JUDGE:

Upon application to the circuit court of Berkeley county, made in the manner prescribed by statute, for an adjudication of its right to appropriate to public use part of a tract of land owned by the Standard Lime & Stone Company and by it operated as a limestone quarry, the court held the applicant, the Williamsport, Nessle & Martinsburg Railway Company, to be a corporation duly chartered, organized, and empowered to invoke the aid of the statutory provisions in that behalf enacted, and, upon compliance with the due prosecution of the regulations requisite for such procedure, permitted it to pay into court the compensation fixed by commissioners appointed for that purpose. Defendant, on writ of error, challenges (1) the sufficiency of the corporate organization of the applicant; (2) its right to condemn; (3) the lawfulness or *bona fides* of its purposes; (4) denies any attempt to agree upon the compensation for the land to be taken; (5) that such land is necessary for railroad purposes; (6) that the road is or will be devoted to public use in whole or in part, asserting that as to one parcel the sole purpose is to serve the Pittsburgh Limestone Company by a branch or spur connecting it with the Western Maryland Railway at Williamsport, such connection being the moving cause for the abortive attempt of the Western Maryland Railway Company to construct a spur track from Charlton, a station on its main line on the Maryland side of the Potomac, to the boundary line between the two states, the failure of which was due to want of authority to condemn a way through the lands now sought to be appropriated to serve none other than the competitor and rival of defendant; and, hence, (7) that the organization of the applicant was to effectuate what the Western Maryland Railway Company was unable to accomplish, under pretense of constructing a branch line from Williamsport opposite Piedmont by way of Nessle to Martinsburg.

Is the applicant a duly organized railway corporation? To it was issued a charter by the proper officer of the state, upon

the application in due form of five persons, who each sub-scribed one share to the capital stock and paid in the requisite percentage of the several subscriptions. Thereafter the same persons increased their shares to a total of 500, 122 by each of four and 12 by one of them. On such increased sub-scription was also paid into the treasury $5,000, or ten per cent of the total amount. After notice published as required by statute, the stockholders met March 22, 1913, adopted by-laws for the government of the corporation, and elected directors for it. The directors met on the same day, organized, elected the officers authorized by the by-laws, advised the secretary of state of the names and post office addresses of these officials, appointed an attorney to accept service of process, directed the charter to be filed in the proper office, selected the executive committee required, employed an engineer to make a survey of the proposed line, and adopted the route apparently previously surveyed, mapped and platted, together with a profile, and ordered the same to be filed as required by law, employed a right of way agent to negotiate for and accept voluntary grants of way to the company and in its name to purchase at once other rights of way where purchases could be had by agreement, and to condemn where such agreements could not be had, and designated the various tracts of land through which such ways were necessary between the terminals designated in the charter, the courses and distances through each tract and the quantity deemed necessary for railway purposes. On the same day, the executive committee so appointed also entered upon the performance of the duties likewise prescribed by the by-laws.

This, it seems to us, prima facie establishes the sufficiency of the corporate organization, and, in that respect, author-izes the company to proceed to exercise the right of eminent domain. *Caretta Railway Co.* v. *Coal Co.*, 62 W. Va. 185. Indeed, the applicant has done more than is reasonably deemed necessary; for it is not a condition precedent to the right to condemn that the certificate of incorporation shall be certified for recordation and recorded in the county where-in is the principal office or place of business of the company. *Railway Co.* v. *Oil Co.*, 35 W. Va. 205.

Plaintiff in error seems to place most stress upon the fact, conceded to be true, that J. M. Fitzgerald, then president of the Western Maryland Railway Company but at the time he testified not officially or otherwise connected with it, furnished and paid the funds required on the stock subscriptions. Without citing any authority therefor, *Bluefield* v. *Bailey*, 62 W. Va. 304, held a plea immaterial which averred that the money paid in condemnation proceedings was furnished by a person other than the applicant. And to us it now seems that payment is the material fact prerequisite, and not the source from which funds for that purpose came. If paid in good faith for corporate purposes, the requirements of the law are satisfied. While the statute makes necessary ten per cent of the stock actually subscribed, there was in this case twice that amount paid in. In *Caretta Railway Co.* v. *Coal Co., supra,* one subscriber held 246 of the 250 shares of stock subscribed, and the other 4 shares appearing on the books of the company in the names of his attorney and three of his clerks. Discussing the question here presented, this court in that case said: ''Yet giving to this contention with others the full weight to which they are entitled, when we add the fact that the public has a right to use this road for its purposes, everything said against the right to condemn this property is insufficient to defeat that right.''

Because in argument nothing is said in support of the assignment denying attempt by the applicant to agree upon a compensation for the lands to be taken, we assume defendant has abandoned it. And upon the fifth assignment we need not delay, as, within certain limitations, a railroad corporation may, preliminary to the exercise of the power of eminent domain, determine what and how much land of the citizen it will condemn for its purposes. And, so long as it acts within such limitations, its discretion is practically absolute. Courts will supervise the exercise of the power, but will not control the right to take any particular property except where the power is clearly abused. *Gas Co.* v. *Lowe*, 52 W. Va. 662; *Railroad Co.* v. *Railroad Co.*, 75 Va. 780. In response to the objection that the appropriation of the land is not for a public use in whole or in part, we cite *Caretta Railway Co.* v. *Coal Co., supra,* saying ''a company organized

under and pursuant to the laws governing the organization of railroad companies in this state has the power to exercise the right of eminent domain, and the taking of property necessary for its corporate purposes is for a public use.''

The other assignments may readily be simplified and reduced to the one inquiry, whether the applicant is endeavoring to appropriate property to a purely private purpose under the guise of a public service corporation. The argument urged in support of a negative answer to that inquiry is in the main predicated upon two propositions. The first is that the applicant was chartered and organized to accomplish that which the Western Maryland Railway Company had failed to accomplish in its effort to construct a branch line from Charlton to the property of the Pittsburgh Limestone Company, solely to provide shipping facilities for the product of the quarries of that company; and that, because the railroad company could not legally condemn the land of defendant for such private use, as held in *Railroad Co.* v. *Iron Works*, 31 W. Va. 710, it procured the organization of the Williamsport, Nessle & Martinsburg Railway Company. The second proposition, confirmatory of the first, is that through Fitzgerald, its president, the Western Maryland company provided directly or indirectly the funds necessary to finance the railroad corporation subsequently organized. As already observed, Fitzgerald did secure and provide the money used by the new corporation. But his testimony clearly shows no part of the funds so used was furnished by the Western Maryland Railway Company, the Pittsburgh Limestone Company, the United States Steel Corporation, the Carnegie Steel Company, or any one or more of them, or by any other company, and that none of them or any other company has agreed to provide the capital necessary to finance the construction, equipment and operation of the railroad contemplated by the applicant. He says, and no witness contradicts or denies the statement, that the money furnished and paid was his own personal private contribution; and he expresses his readiness and ability likewise to provide, or by negotiations with others than the corporations mentioned, to secure the capital necessary to build, equip and operate a railroad between the two terminals designated

in the charter granted by the state. We think the argument sought to be deduced from these facts is by no means conclusive. Nor are they persuasive to the extent authorizing us to deny to the applicant the exercise of the right to condemn, granted to it by the issuance of the charter.

This case readily may be distinguished from *Railroad Co.* v. *Vencill,* 80 S. E. 1103. The evidence in that case mainfestly showed a purely private purpose, and not a public one, as did also *Railroad Co.* v. *Iron Works, supra.*

Plaintiff in error does not undertake to controvert the fact, clearly apparent, that along the line of the proposed railroad valuable properties await the shipping facilities to be provided. Many ledges of limestone, lying in close proximity or readily accessible to it, await such construction and operation. When crushed or pulverized, limestone becomes an indispensable accessory in the manufacture of steel and iron. Defendant fully appreciates the value of these quarries, one of them being profitably operated by it. The railroad will serve other manufactories, and afford facilities for the transportation of farm products, enlarge facilities for public travel by furnishing connection with the Western Maryland and other railroads, and enhance the value of all properties and serve many communities located along the projected route, all of which will and must be served alike by the applicant's road when constructed and operated.

The lower court did not, nor do we, find from the evidence any substantial ground or reason for denying to the applicant the right it has invoked; a right by statute conferred upon all railroads chartered, organized and doing business in this state. A mere suspicion of the want of good faith will not suffice.

We are therefore of opinion to affirm the judgment sought to be reversed, and to remand the case for further proceedings according to law; and an order will be so entered.

*Affirmed and remanded.*