CASE 31—ORDINARY—DECEMBER 7, 1880.

# Kentucky Central Railroad Company v. Thomas' adm'r.

APPEAL FROM HARRISON CIRCUIT COURT.

1. Where the defense is contributory negligence, the proper question. for the jury is, whether the damage was caused entirely by the neg- ligence of the defendant, or whether the person injured so far con- tributed to the injury by his own negligence that, but for it, the: injury would not have occurred.

2. Contributory negligence is a defense that confesses and avoids the· plaintiff's case, and must be made out by showing not only that plaintiff was guilty of negligence, but that it co-operated with de- fendant's negligence to produce the injury.

3. Ordinarily, it is the duty of a conductor to warn a passenger known to be occupying a dangerous position, and to cause him to go into a passenger car, and his failure to do so may be equivalent to· the consent of the company that the passenger may occupy that position. If the passenger takes his place in the baggage, mail, or· express car, without the knowledge or consent of the conductor, he will not be permitted to excuse himself upon the ground that the· conductor ought to have discovered him and ordered him out.

4. Railroad companies are not liable for casualties which. human sagacity cannot foresee, and against which the utmost prudence cannot guard.

5. The court erred in instructing the jury that no fault on the part of the intestate which did not contribute to the wrecking of the train would authorize them to find for the defendant.

STEVENSON & O'HARA FOR APPELLANT.

1. The decedent, as messenger of Adams Express Company off from duty, had no right to take his seat in the baggage car. His place· was in a passenger car.

2. He was guilty of contributory negligence by taking his seat in a more· dangerous place, if the train should be wrecked by a collision.

3. The court erred in instructing the jury. (Ky. Cen. R. R. Co. v. Dills,. 4 Bush, 593; L. & N. R. R. Co. v. Sickings, 5 Ib., 1; O'Donnell v. R. R. Co., 59 Penn., 250; Central Law Journal, 1878; B. & P. R. R.. Co. v. Jones, Sup. Ct. Rep., 1877; 4 Bush, 535.)

J. Q. WARD AND C. W. WEST FOR APPELLEE.

1. The decedent, at the time of the wrecking of the train, was in the· employment of Adams Express Company, and the appellant had

Kentucky Central Railroad Company v. Thomas' adm'r.

agreed, for a valuable consideration, to carry over its road the express messengers and goods in a car provided by appellant for that purpose.

2. He was killed without any fault or neglect of his own.

3. There is a striking difference between this case and every case in Kentucky wherein it has been held that contributory negligence' existed.

4. The court committed no error in its instructions.   (N. C. R. R. Co. v. State, use of Price, 29 Md., 421; 33 *Ib.*, 553; 36 *Ib.*, 366; 3 Ohio, 196; 17 B. Mon., 598; 1 Duer, 579; American Law Reg., May, 1875, 271; 20 N. Y., 494; 39 *Ib.*, 228; 58 Maine, Dunn v. G. T. R. R. Co., 591; N. S. R. R. Co. v. Johnson, MS. Opin., Feb., 1881; Gen. Stat., 550; 65 N. Y.; Sedgwick on Damages, 495; 59 Penn., 249; 39 N. Y., 228; Lou. & N. R. R. Co. v. Sickings, 5 Bush, 1; Ky. Cen. R. R. Co. v. Dills, 4 Bush, 593; 9 Bush, 736; 7 *Ib.*, 238; 3 *Ib.*, 11; Lou., Cin. & Lex. R. R. Co. v. Case's adm'r, 9 *Ib.*, 731; 9 *Ib.*, 528.)

CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

June 21, 1876, while one of the appellant's passenger trains was proceeding on its way from Lexington to Covington, it came in collision with a herd of cattle straying on the track, and the engine, baggage, and express car were wrecked, whereby Edwin M. Thomas, then traveling in the latter, was instantly killed.

This action was brought by his personal representative under section 1, chapter 57, of the General Statutes, to recover damages for the loss of the life of Thomas, on the ground that it was caused by the negligence of the agents and employés of the company.

The answer admitted the death of Thomas, but denied the charge of negligence on the part of its agents and employés, and alleged that the decedent was himself guilty of negligence, but for which his life would not have been lost.

A trial resulted in a verdict and judgment for the plaintiff, and the court having refused a new trial, the company has brought the case here for review.

Upon the question whether the agents and servants of the appellant engaged in running the train were guilty of negligence in not preventing the wrecking of the train, the evidence was conflicting.

The facts touching the alleged contributory negligence of the decedent are about as follows :

He was in the employ of the Adams Express Company, and engaged in running as messenger between Lexington and Covington.  On the day of his death he went from Covington to Nicholasville in charge of the express goods on the train.  In the evening he started to return to Covington, in order to be there on the following morning to go out again in charge of freight.  On his return trip he was not on duty as messenger, but the duty was performed by another.  He paid no fare; but, under the agreement between the Express Company and the Railroad Company, the former paid a gross sum for the transportation of its freight and messengers.

There is a rule of the Express Company forbidding any one to ride in the express car except the messenger on duty ; and there is also a rule of the Railroad Company that conductors and baggage-masters must not allow any person to ride in baggage, mail, or express cars whose duty does not require them to be there.

The decedent went into the express car, and was riding there when the accident occurred.  None of the passenger cars were thrown from the track, and no one in any of them was injured.  There was plenty of room in the passenger cars.  It did not appear that the conductor knew the decedent was riding in the express car.

The most important questions in the case grow out of the action of the court in giving and refusing instructions.

Kentucky Central Railroad Company v. Thomas' adm'r.

In the first instruction given for the plaintiff, the court told the jury, in effect, that no fault on the part of the intestate, which did not contribute to the wrecking of the train, would authorize a verdict for the defendant, on the ground of contributory negligence, and refused to instruct, as asked by the defendant, that it was the duty of the intestate to occupy a seat in one of the passenger coaches, and that if he went voluntarily into the express car, and it was more dangerous to ride in that car than in a passenger car, and that his life was lost in consequence of his being in the express car, they should find for the defendant.

That the intestate was a passenger, and entitled to the privileges and subject to the duties incident to that relation, is not disputed.

When the defense is contributory negligence, the proper question for the jury is, whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary or common care and caution, that but for such negligence or want of ordinary care and caution on his part the misfortune would not have occurred. In the first case, the plaintiff would be entitled to recover; in the latter, he would not. (R. R. Co. v. Hoehl, 12 Bush, 41.)

And this rule applies as well when the negligence of the plaintiff exposes him to the injury as when it coöperates in causing the misfortune from which the injury results. (Doggett v. R. R. Co., 34 Iowa, 284; Colgrove v. R. R. Co., 20 N. Y., 492; R. R. Co. v. Dills, 4 Bush, 590; R. R. Co. v. Sickings, 5 Bush, 1; McAunich v. R. R. Co., 20 Iowa, 345.)

When a passenger enters a railway train he should take a. seat in a passenger coach, if there is room, and if he volun-- tarily goes to a position of greater danger, and is injured, the question whether he is guilty of contributory negligence,. which will defeat his action, will depend upon the nature of the misfortune which resulted in his injury.   (R. R. Co. v. Montgomery, 7 Ind., 474.)

Contributory negligence is a defense which confesses and. avoids the plaintiff's case, and must be made out by show- ing affirmatively, not only that the plaintiff was guilty of negligence, but that such negligence coöperated with the negligence of the defendant to produce the injury.

If a whole train be precipitated down an embankment, or through a bridge into deep water, and a passenger seated in the express car is drowned, his representative will have the same right to recover as the representative of a passenger who was seated in a passenger coach.   There could be no pretense for saying that, because the passenger in the ex- press car was more exposed to danger in case of a collision with a train running in the opposite direction than he would have been if he had been in a passenger coach, that he ought not to recover, when it is clear that, as respects the misfortune which actually occurred, his danger was not at. all increased by the fact that he was in the express car.

So also of a large class of railroad disasters which result from the giving way of the track, or the breaking of some portion of a car.   These are as liable to occur at one por-- tion of a train as at another, and, consequently, a passenger is in no more danger of injury from such accidents in the express car than in a passenger car (O'Donnell v. Railroad Co., 59 Penn., 250); and the fact that he was in that car when the accident occurred would not defeat his right to

recover, unless, perhaps, the injury should result from some agency in that car which would not have existed in a passenger car.

But there is another class of disasters in which the danger may be greater in the express car than in the passenger car. Express cars are usually in advance of passenger cars, and in case of collision with stock or other objects on the track, or with trains running in an opposite direction, the danger may be greater in the express car.

The question of contributory negligence may be further affected by other facts.

The conductor is, as to the train under his charge, the general agent of the company; and if a passenger be invited by him to occupy a position more dangerous than a seat in a passenger car, and the passenger is injured while in that position, the company could not defeat an action for the injury by a plea of contributory negligence. In such a case the act of the conductor would be the act of the company. (Burns v. Railroad Co., 50 Mo., 139; Clarke v. Railroad Co., 36 N. Y., 135.)

If a conductor require a passenger to occupy a dangerous position, the company would be liable in the same manner as if it had itself given the order.

Ordinarily, it is the duty of a conductor to warn a passenger known to be occupying a dangerous position on the train, and to request him to take a seat in the passenger car, and his failure to do so may sometimes be equivalent to the consent of the company that the passenger may occupy that position. (50 Mo., 139; 36 N. Y., 135.) But he is not bound, at the peril of the company, to know that a passenger is in an exposed position, and unless he does know

it, the passenger has no right to complain that he was not: warned.

It is the duty of passengers to occupy the cars provided, for them, and the conductor has a right to presume that they are doing so until he knows the contrary; and if a passenger goes into the baggage, mail, or express car without the: knowledge or consent of the conductor, he will not be permitted to urge, as an excuse for remaining there, that the conductor should have discovered him and ordered him back: to his seat, but failed to do so. No one can be permitted. to justify or excuse his own improper conduct by alleging: that it was the duty of another to prevent such conduct on, his part.

It seems to us, therefore, that when contributory negligence is interposed as a defense to an action against a railroad company for negligently injuring a passenger, and the supposed negligence consists in the fact that the passenger voluntarily occupied a position in the train which was more dangerous than the position he should have occupied, the nature of the accident causing the injury is to be considered; and if, upon such consideration, it appears that the danger of injury from that particular accident was materially increased by the fact that the passenger was in that particular place, instead of the place he should have occupied, he ought not to recover, unless he was there with the consent of the conductor.

But if the nature of the accident be such that the danger of injury was not enhanced in consequence of the position occupied by the passenger, or if the accident was of such a nature as was as likely to occur in one portion of the train as another, or if he occupied the place with the knowledge

or consent of the conductor, his right of recovery will not be affected by the fact that he was at an improper place.

Applying these tests to the case before us, we are satisfied the court erred in telling the jury that no fault on the part of the intestate which did not contribute to the wrecking of the train would authorize them to find for the defendant, and in refusing instruction "A" asked by counsel for the appellant.

Counsel for the appellee cite several authorities on this point, but none of them seem to us to bear directly upon the question.

The case which comes nearest to this is O'Donnell v. Railroad Company, 59 Penn. St., 239.

In that case it appeared that O'Donnell had been employed by the defendant to work on one of its bridges, and as part of his wages the defendant agreed to carry him to and from his home each day on its passenger train. After he had been thus engaged for near two months, during which time he generally rode in the baggage car, he was injured while riding in that car, in consequence of the giving way of the track.

The trial court charged the jury that if the plaintiff rode in the baggage car by invitation or direction of the conductor, the fact of his being in that car would not affect his right to recover; but such invitation or direction should not be inferred from the mere fact that he had been accustomed to ride frequently in the baggage car with the knowledge and without objection on the part of the conductor, And further, that it was the duty of passengers to occupy the place provided for them; that baggage cars are assigned for baggage and not for passengers, and any one possessed of intelligence sufficient to travel, should be held to know that

the baggage car is not an appropriate place for passengers, and if a passenger chooses to leave his seat in the passenger cars, and go into the baggage cars, he is guilty of negligence, and if it is shown to the satisfaction of the jury that such negligence contributed in a material degree to his injury, he could not recover.

Commenting on this instruction, Agnew, J., said:

"In view of the evidence, this instruction was erroneous. The plaintiff had been riding in the baggage car twice a day for about two months.   Murphy, the conductor, himself admitted that Liston's men (of whom O'Donnell was one) rode frequently in the baggage car without his objecting; that he never ordered them out.   When they got on that car they generally remained without objection ; that he had no recollection of requesting them to go into the passenger car, and that he had not at any time requested the plaintiff to leave the baggage car. . . . . . Under these circumstances it cannot be justly said of them, as of ordinary passengers, 'that any one who is possessed of sufficient intelligence to travel should be held to know that the baggage car is not an appropriate place for passengers,' nor to say, although the consent of the conductor to ride there may be inferred from these facts, yet it does not follow that the company is liable, unless it is shown that they were there at the *invitation* or by the *direction* of the conductor. . . . . . From the evidence in this case, the jury might reasonably conclude that O'Donnell was in the baggage car with the permission of the conductor, and for the benefit of the company, and was rightfully there at the time of the accident."

It is evident from this language that the court did not mean to decide that being in the baggage car would not,

under any circumstances, be such contributory negligence as would defeat an action by a passenger to recover for an injury sustained while riding in that car.  On the contrary, it seems to us clear that the court entertained an exactly opposite opinion.  After saying that the instruction was erroneous, in view of the evidence, the learned judge proceeds to state evidence from which the jury might have inferred that O'Donnell was riding in the baggage car, not only with the knowledge and consent, but by the desire of the conductor.  The suggestion that the evidence showed that the plaintiff had been riding in the baggage car twice a day for two months, with the knowledge of the conductor, and without objection on his part, shows that the court only meant to decide that the evidence would have warranted the jury in finding that he rode there with the consent of the conductor, and that if he did so, he was not guilty of contributory negligence, and this implies that if he rode there without such consent he was guilty.

In Dunn v. Grand Trunk R. R. Co., 58 Maine, and 10 Am. Law Reg., N. S., 615, the only negligence alleged was, that the plaintiff took passage on a saloon car attached to a freight train, contrary to a regulation of the company forbidding the carrying of passengers on such trains.

The conductor knew the plaintiff was in the car before the train started, but failed to direct him to get off; and after the train started received fare for a first-class passage.  The company was held liable on the ground that it was the duty of the conductor to enforce the regulation, and having failed to do so, the company was bound by his acts and omissions, and became, as to the plaintiff, a carrier of passengers, and bound to the same extent as if the plaintiff had been injured on one of its passenger trains.

In Edgerton v. N. Y. and H. R. R. Co., 39 N. Y., 227, the only negligence imputed to the plaintiff was, that he took passage on the caboose attached to a freight train. The case showed that the company was in the habit of carrying passengers in that way, and as in Dunn's case, *supra*, the court held that it incurred the same liability as if he had been a passenger on a passenger train.

In Carroll v. Railroad Co., 1 Duer, 579, it appeared the plaintiff rode in the baggage car with the consent of the conductor.

L., C. & L. R. R. v. Mahoney, 7 Bush, 239, was an action under the third section of the statute for "willful" negligence, and has no application here.

2. The plaintiff offered evidence conducing to prove that the Westonhouse air-brake was more efficient in arresting the progress of a train than the brakes in use on the defendant's train on which the intestate was killed.

The defendant objected and excepted, and assigns that action of the court as error.

Railroad companies are held to a very high degree of care and vigilance in everything that pertains to the security of the lives and limbs of their passengers, and are held liable for even slight negligence on their part.

They are bound to provide a road, and engines and cars, free from all defects which endanger the lives of passengers, and which might have been discovered by the closest and most careful scrutiny of competent men, and to employ competent and trustworthy persons to operate and manage their roads, engines, and cars, but are not liable for casualties which human sagacity cannot foresee, and against which the utmost prudence cannot guard.

Kentucky Central Railroad Company v. Thomas' adm'r.

Nor have they discharged their whole duty when they have provided the things just mentioned. They are bound to add to them such apparatus and appliances as science and skill shall, from time to time, make known, and experience shall prove to be valuable in a considerable degree in diminishing the dangers of railroad travel, provided such improvements can be procured at an expense not greater than ought to be incurred to obtain them. (Taylor v. Railway, 48 N. H., 316; Tuller v. Talbot, 23 Ills., 357; Casillo v. Railroad Co., 65 Barb. ; Smith v. Railroad Co., 19 N. Y., 127; 2 Redfield's Law of Railways, pages 187, 188, 189, 3d ed. ;. Ford v. L. & S. W. Railway, 2 F. & F., 730; Meier v. Railroad Co., 64 Penn. St., 230; Steinway v. Railroad Co., 43 N. Y., 123; Caldwell v. New Jersey Steam-boat Co., 47 N. Y., 282.)

We have not anywhere met with a rule by which to determine, in a given case, whether it is the duty of a railroad company to provide a designated improvement for use on its trains.

It is said, in substance, in Taylor v. Railway, *supra*, that the degree of care to be required is not to be measured by the revenues of the company, "but that in fixing a general standard of care and diligence there should not be so much required as to render this mode of conveyance impracticable."

The plaintiff in that case was injured in consequence of the breaking of one of the iron rails in the track. It was shown that the rail was much worn and battered. The question was, whether the company had been guilty of negligence in failing to replace it with a better one.

In such a case we quite agree that the question of due care is not to be measured by the revenues of the company.

All companies engaging in the transportation of passengers must be required to provide a safe track, and sound machinery and cars, and capable and trustworthy operatives.

These are essential to a reasonable degree of safety; and a company unable to provide them should cease operations.

But it seems to us that it would be unreasonable to require companies of small means and business to provide every appliance or machine that may be found to be valuable in diminishing the dangers of railroad travel, and which may come into general use on the great trunk lines, and lines connecting large cities, and carrying a thousand passengers while others carry a hundred.

To adopt such a rule would be to drive many companies into bankruptcy, and to render it necessary to suspend operations altogether upon others.

In Smith v. N. Y. & H. Railroad Co. (19 N. Y., 127), the court, speaking of the rule which requires railroad companies to avail themselves of all new inventions and improvements, the utility of which has been tested, used this language:

"Undoubtedly the rule is to be applied with reasonable regard to the ability of the company, and the nature and cost of such improvements; but within its appropriate limits it is a rule of great importance, and one which should be strictly enforced."

The evidence showed that the defendant company, within the twelve months preceding the accident, had declared a dividend on its capital stock of $5,000,000. What the amount of the dividend was does not appear.

It also appeared that the cost of the air-brake would have been $500 for each locomotive, and $200 for each car, or

Kentucky Central Railroad Company v. Thomas' adm'r.

$12,000 or $15,000 for all of the company's engines and cars.

The evidence also conduced to prove that the Weston-house air-brake had been fully tested, and its utility proved, and that it was in use on many roads in the United States, and gave general satisfaction.

We are therefore of the opinion that the evidence offered on this point conduced to prove negligence on the part of the company, which contributed to the accident in which the intestate lost his life, and that it was properly admitted.

That we may not be misunderstood, it is proper to remark that we do not intend to decide that a company able to do so is bound always to provide the very best improvement that may be known to practical men, but only that it must provide that which is reasonably good when compared with that which has been proved by proper practical tests to be the best.

Counsel also contend that the evidence was not admissible under the pleadings. The allegation is, that the accident was occasioned by the negligence of the agents, officers, hands, and employés of the defendant.

This was sufficient to admit evidence of every fact conducing to prove that the disaster resulted from either the misfeasance or non-feasance of the company or its agents or servants.

Instructions 2 and 3, given for the plaintiff, seem to be unobjectionable, and the instructions asked by the defendant, but not given, except that marked, were properly refused.

Judgment reversed, and cause remanded for a new trial upon principles not inconsistent with this opinion.