# CHARLESTON.

Carrico v. West Virginia Cent. & P. R'y Co.

Submitted January 30, 1894.—Decided March 24, 1894.

1. Evidence.

   In an action to recover damages for injury to a plaintiff's arm, necessitating its amputation, it is not error to allow the plaintiff to exhibit to the jury the naked remnant of the arm. (p. 89.)

2. Evidence of Dead Witness.

   The evidence of a witness given on a former trial of a civil case, who has since died, may be proven on a subsequent trial of the case. (p. 89.)

3. Evidence.

   The long hand notes made by the sworn stenographer, who took the evidence upon a former trial of the case, are the best evidence of such evidence of the dead witness, and should be used, or the non-production thereof legally accounted for, on a second trial; but where those notes show, that the dead witness made in his evidence an illustration merely, and do not show what that illustration was, or in any way convey it to the second jury, a witness may be used to prove what such illustration was. (p. 90.)

4. Railroad Companies—Negligence—Contributory Negligence—Damages.

   It is the absolute duty of a railroad company to keep its track free from dangerous obstructions of every sort, so that its cars may pass safely; and, if a passenger is injured by reason of any such obstruction along the line of its road, the burden is upon it to prove that the accident was the result of the plaintiff's own negligence, or that the most thorough and perfect diligence could not have foreseen and prevented the injury. Neither can the company relieve itself from liability as to the condition and construction of its road by confiding duties, which it owes to passengers, to other hands, whether independent contractors or not. (p. 92.)

5. Railroad Companies—Negligence—Contributory Negligence—Independent Contractor.

   The doctrine of the non-liability of one for the negligence of another because the latter is an independent contractor does not apply to relieve the former from liability for the omission of a duty imposed upon him by law in behalf of the safety of the public. (p. 92.)

6. Railroad Companies—Negligence—Contributory Negligence—Damages.

   If a railroad company, while using its track for the carriage of

passengers, engages in a work to be done on its road, and in the immediate proximity to its track an accident happens to a passenger by reason of an obstruction of the track preventing the safe passage of the cars, arising from negligence in the performance of the work, it is no defence to the company to show that it had placed the work in the hands of an independent contractor, and that his carelessness caused the obstruction. (p., 93.)

7. RAILROAD COMPANIES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DAMAGES.

To debar a plaintiff from recovery of damages for an injury from negligence, his negligence must be the proximate cause of the injury. When both parties are chargeable with negligence, the plaintiff can not recover if his negligence contributed in any degree to his injury; but, if it did not contribute to it in any degree, he may recover, his negligence not then being contributory, because not the proximate cause of the injury, but only remote from it, or collateral to it; and the defendant's negligence is in such case the proximate cause of the injury. (p. 97.)

8. RAILROAD COMPANIES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DAMAGES.

Though the negligence of the plaintiff be in character contributory, yet, if his injury would have occurred from the defendant's negligence just the same if the plaintiff had been in no wise negligent, the plaintiff is not prevented by his negligence from recovery. (p. 98.)

9. RAILROAD COMPANIES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DAMAGES.

Though a plaintiff be chargeable with negligence contributing to the injury, yet, if the defendant know of the danger to the plaintiff arising from his negligence, and can by ordinary care avoid the injury, but does not, he is liable for his negligence, notwithstanding the plaintiff's negligence. (p. 99.)

10. INSTRUCTIONS.

An instruction is abstract and should not be given, if no evidence tends to show the facts it supposes. (p. 100.)

11. INSTRUCTIONS.

If an instruction has been given, this Court will not reverse a judgment because of it, if there is any evidence tending to prove the fact it supposes, though that evidence be very weak in the opinion of this Court. (p. 101.)

12. DAMAGES.

Things which may be considered in assessing damages for injury to person. (p. 102.)

13. INSTRUCTIONS.

An instruction ought never to assume as proven the facts which it supposes, but ought to be hypothetical; yet, if such an instruction has been given, and the appellate court sees from the record

that those facts were proven beyond controversy, and were conceded or tacitly conceded, and not a subject of controversy on the trial, such improper instruction will not be ground for reversal if correct in law. (p. 103.)

14. INSTRUCTIONS.

An instruction which could not possibly have prejudiced the party, though incorrect or abstract, will not be ground for reversal; but it must be very clear that it could not have hurt the party complaining of it. (p. 105.)

15. INSTRUCTIONS

If a party, who has caused to be submitted to the jury particular questions of fact, allows the jury finding a general verdict to be discharged without asking the court to have said questions answered, he is deemed to have waived such answers. (p. 105.)

C. W. DAILY and L. D. STRADER for plaintiff in error:

I.—*On competency of testimony of John Coniff.*—1 Greenl. Ev. (Redfield's Ed.) § 165; Code, p. 1062, last part of sec. 3 of Act relating to Stenographers.

II.—*On instruction No. 8, for plaintiff.*—35 W. Va. 390, 402, 403.

III.—*On instruction No. 12.*—35 W. Va. 400, 402.

IV.—*On right and duty of Court to set aside verdict.*—23 W. Va. 229, 236; 12 W. Va. 116.

A. B. PARSONS for defendant in error:

I.—*Admissibility of evidence.*—34 Md. 204, 216; Abb. Trial Ev. p. 594, § 32; 30 N. Y. 370; Abb. Ct. App. Dec. 451; 1 Greenl. § 165 and notes, § 166; Code, p. 1062, s. 3.

II.—*On setting aside verdict and granting new trial.*—12 W. Va. 116; 21 W. Va. 709; 23 W. Va. 229.

III.—*Duty of railroad companies to passengers.*—15 Gratt. 230; 27 W. Va. 145; 25 W. Va. 571; 24 W. Va. 37; 17 W. Va. 190; 35 W. Va. 389.

IV.—*Instructions.*—32 W. Va. 370; 34 W. Va. 232; 19 W. Va. 350; 35 W. Va. 391, 392.

B. B. DOVENER and J. J. CONIFF, for defendant in error:

I.—*Competency of testimony.*—33 W. Va. 526; Id. 40; 36 W. Va. 303.

II.—*Liability of railroad companies for negligence.*—15 Gratt. 230; 32 W. Va. 370; 35 W. Va. 389; 25 W. Va. 570; 18 S. E. Rep. 448.

BRANNON, PRESIDENT :

This case has been once before in this Court, 35 W. Va. 389 (14 S. E. Rep. 12). The action was to recover damages for injury to the arm of the plaintiff caused by the collision of the coach in which the plaintiff was a passenger with a pile of rock near the track. The plaintiff recovered a verdict and judgment for nine thousand dollars and the railroad company has brought the case to this Court on writ of error.

Question 1. Did the court err in allowing the plaintiff to unclothe and exhibit to the jury the shoulder from which the arm had been severed by amputation? Counsel for plaintiff in error while insisting on this point cites no authority to sustain his contention. Of course evidence must be relevant, as tending to establish some material matter in the case. Is this at all relevant? The plaintiff had a right to prove the hurt, and that it had entailed lasting injury by causing the amputation and loss of his arm. He could prove that by oral evidence. He could himself stand before the jury for ocular demonstration of the fact; and why may he not intensify and make more certain the fact by inspection of the naked shoulder itself? It is only more and more conclusive evidence upon a fact, which he was entitled to prove, and, being relevant, we can not exclude it, because there may have been danger of inspiring sympathy in the jury and increasing damages. (See note.)

Question 2. Did the court err in permitting the witness Coniff, to give evidence of the evidence of Sydney Harris on a former trial, she having died before the second trial? It seems clear that the law allows evidence to prove the evidence on a former trial of a witness since deceased. 1 Greenl. Ev. § 163; Rice, Cr. Ev. § 224. But this is said not to be sustained by decisions in Virginia or West Virginia.

In *Finn's Case*, 5 Rand (Va.) 70, it is asserted, that such evidence is admissible in civil cases but not in a criminal case. This was *obiter* as to a civil case, as the case was a criminal case, and perhaps *obiter* as to a criminal case as to a dead witness, as the witness was one out of the state. In

*Brogy's Case,* 10 Gratt. 733, that case is recognized as deciding that such evidence is not admissible in criminal cases, and evidence of what a witness for the prisoner said on a former trial, though offered by the prisoner, was rejected. How far these cases settle the question as to the admissibility of evidence of a deceased witness on a former trial is immaterial here. Though not binding, I think the opinion of Judge Brockenbrough in *Finn's Case,* that in civil cases the evidence of such deceased witness is admissible, is clearly good law, harmonizing with the vast volume of authority elsewhere. It has been so held in *Lee's Adm'r* v. *Hill,* 87 Va. 497 (12 S. E. Rep. 1052).

The only serious question here is as to the mode of proof in this case. The plaintiff proved what the dead witness had stated by Coniff and not by the evidence as taken in shorthand and written out in longhand by the stenographer on the first trial; and the appellant's counsel contends, that the stenographer's report was the best evidence and should have been used, because the statute (Code 1891, p. 1062, § 3) makes it official.

It seems to me that, as this act declares the reporter's notes official and the best authority in any matter of dispute, and provides that they shall be used by the parties in any proceedings wherein they may be required, such notes must be used, or an excuse be given before substitutionary evidence can be given. I do not regard these notes as technically primary evidence in a legal sense, but the clauses of the act just mentioned themselves make the notes in effect primary. Why, under these clauses, evidence by a witness should be resorted to in a second trial of the same case between the same parties instead of these notes, I can not see, looking at the statute. The legislature surely meant it to be the highest authority on the evidence between the same parties in that case on that trial or a new trial, because taken by a sworn stenographer, in presence of court, witness, parties and counsel, and presumably verified, and therefore more apt to be reliable than a witness stating it. But for those features of the statute no doubt any witness could be called to prove the evidence of the dead witness. The opinion by Judge Lucas touching this

statute, in *Cummings* v. *Armstrong*, 34 W. Va. 1 (11 S. E. Rep. 742) leans in this direction.

But, be that question as it may, suppose the stenographer's notes are inadequate to convey to the second jury what the witness conveyed to the first, as is peculiarly the case in this instance. A most material question is whether the plaintiff's arm, at the time the moving train raked against the pile of rock, and his injury was received, was inside the car or extended outside of the window. Mrs. Harris, when asked a pointed question as to this, according to these notes did not answer in words, and instead of such answer the notes used the word "illustrates." However plain to the first jury that illustration may have been —plainer to convey her meaning than words, perhaps— yet that illustration was not furnished by these notes, and the notes on this point would convey no meaning.

Coniff's evidence shows that Mrs. Harris in her illustration used a book to represent the window-sill of the car, one side of it representing the inside of the window, the other its outside, and placing her elbow upon it showed how Carrico's arm was relative to the outside of the sill and car, showing several inches space between the elbow and the outside of the car. Now, should the plaintiff have been required to use only these notes of the evidence, and lose the benefit and meaning of Mrs. H's evidence as given on the first trial? We think not. The proper course was to read the official report of Mrs. Harris's evidence, and to use oral evidence to supply its defect above specified. But an inspection of the report of her evidence, which we are authorized to make (section 7, c. 135, Code) shows that there is no variance between it as then given and as given by Coniff. But, if there were, or if Coniff omitted any matter which she stated, there was the official report, and the defendant could have used it to ward off harm to it or for any lawful purpose.

We see no room to say that harm was done to the defendant under this heading. To reverse a trial on this ground would be narrow and technical. It is not every step in a long, wearisome trial that is the open sesame all-

potential to call for reversal. The field of harmless error has been sensibly widening in recent years. The courts are becoming more and more, every year, averse to reversing decisions for technical error or errors plainly not harmful, especially where it is seen that substantial justice has been done.

Question 3. Is there error in instructions given for plaintiff? As they may be of use to courts and bar, I give them in full:

Instruction No. 4.—"The court instructs the jury that if they believe from the evidence that the defendant placed or allowed to be placed by its railroad track a pile of stone in such dangerous proximity to said track as to prevent the passage of a passenger car on said track without striking or scraping said car, and in consequence thereof the plaintiff was injured as is charged in the declaration, without fault on his part contributing to said injury, such act of the defendant is negligence in law."

It is said this instruction is bad because no evidence showed that the company placed or allowed the stones to be placed where they were, but they were placed there by third parties. They were placed there by persons getting them for work on the line of the road. I will not enter at large into the nice question of how far one person is liable for the act of another, who is an independent contracter, or the question, who is an independent contracter—as to do so would be useless in this case and only repetition of elaborate discussion long ago applied to the question. The general rule may be stated to be that one, who has contracted with a fit and competent person exercising an independent employment to do work not in itself dangerous to others or unlawful, according to the contracter's own method, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontracter or servants committed in the prosecution of his work.

Nice questions arise in the application of the rule. Who is an independant contracter? Or rather, is he an independent contracter, or only an agent or representative of the employer in the particular case? A test which has

been proposed, and generally an adequate one, or as good a test put in a few words as can be suggested, is:—Had the defendant the right to control, in the given particular, the conduct of the person doing the wrong ? If he had, the employer is liable ; if not, he is not liable, for the reason that the one doing the act is an independent contracter. See Whart. Neg. § 181; 2 Thomp. Neg. §§ 22, 35 ; 2 Wood, Ry. Law, § 284 ; 1 Ror. R. R. 468 ; *Railroad Co.* v. *Hanning,* 15 Wall. 649 ; Cooley, Torts, 546 ; Patt. Ry. Acc. Law, 119 ; *Powell* v. *Construction Co.,* 88 Tenn. 692 (13 S. W. Rep. 619) ; *Railroad Co.* v. *Willis* (Kan.) 16 Pac. 728 ; (33 Am. & Eng. R. Cas. 397, and note 7) ; *Dillon* v. *Hunt,* 105 Mo. 154 (16 S. W. Rep. 516); *Roddy* v. *Railroad Co.,* 103 Mo. 234 (15 S. W. Rep. 1112) ; *City of Erie* v. *Caulkins,* 85 Pa. St. 247 (27 Am. Rep. 642 and note).

But this principle can not relieve the defendant in this particular case. One of the very plainest duties imposed upon a railroad company carrying passengers for pay is that it shall keep its track in good and safe condition, free from obstructions endangering those passengers. For the public to yield or waive the performance of this duty would be to waive that which is of the highest importance to personal safety and life itself. The law is necessarily rigid as to this. Passengers are entitled by the clearest principle to look to the carrier who has engaged to carry them in this respect, and can not be told to follow some one, a stranger to them, and often irresponsible. The company can not divest itself of or shift this obligation.

In this case when before in this Court this duty is called an absolute duty imposed upon the company ; and in *Searle* v. *Railway Co.* 32 W. Va. 370 (9 S. E. Rep. 248) we held that railroad companies, in tenderness to human life, are liable to passengers for the slightest negligence and are required to exercise the greatest possible diligence and care, not only in the management of trains but also in the structure, repair and care of the track and bridges. and all other arrangements necessary to the safety of passengers. In this case we find a pile of rock so close to the track that the passenger car can not pass in safety, but collides with or scrapes against it, and grievously hurts a passenger's

arm, invading, we may say, the very track itself, for the track is for the passage of the coach. Surely the railroad company is liable to the passenger. The doctrine of non-liability of a defendant, because the act is that of an independent contractor, does not apply where the thing, which that contractor does and does negligently, is something which the law in defence of public interests requires the defendant to do carefully and properly. Patt. Ry. Acc. Law 127; *Robbins* v. *City of Chicago*, 2 Black. 418; Whart, Neg. § 185. See, especially, Wood, Mast. & Serv. § 316; *Storrs* v. *City of Utica*, 17 N. Y. 104.

Here the duty rested on the company not to pile the stones as they were piled, and, had the company itself done the act, it would have been liable for obstructing the way; and it is none the less liable in this case. In the similar case of *Railroad Co.* v. *Sanger*, 15 Gratt. 230, Judge DANIEL said that if a railroad company using its track for passengers engages in work on its road or in the immediate proximity to its track, negligence in doing which would in the opinion of cautious persons involve the hazard of obstruction to the passage of its cars, it would be just as incompetent for it in case of accident to a passenger from negligence in the work to show merely that it had placed the work in the hands of a contractor, and that the obstruction was caused by the carelessness of one of his employes, as it would be for the company, in case of accident to a passenger from want of care or skill in the management of a train to show that such management had been let out to a contractor, and that the accident was due to the negligence of one of his employes.

In *Carrico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12)—this very case—it was held: "It is the absolute duty of a railroad company to keep its track free from dangerous obstructions of every sort, and when a passenger is injured by reason of any such obstruction along the line of its road, the burden devolves upon it to prove that the accident was the result of the plaintiff's own negligence, or that the most thorough and perfect diligence could not have foreseen and prevented the injury. Neither can the company relieve itself from the liability in regard to the condition and con-

struction of its road by undertaking to confide these duties which it owes to passengers to other hands, no matter what precaution it may have taken in selecting such agencies."

I concurred in this point in the syllabus. A careful reconsideration of this feature of the case has not disclosed to my mind any error in it. We think it concludes this point on the present writ of error. We also think, as to this point, the case of *Railroad Co.* v. *Sanger*, 15 Gratt. 230, binds us to hold the defendant liable in this case. There a contractor was getting out rock for work on the road, and a rock in some way obstructed the track, derailed a train, and injured a passenger, and it was held that the duty of keeping the track free of obstruction was embraced in the warranty to carry the passenger safely, and that, if a railroad company, while using its track for carriage of passengers, engages in a work to be done on its road and in the immediate proximity to its track, negligence in which would, in the opinion of cautious persons, involve the hazard of obstruction to the passage of cars, and an accident to a passenger comes from negligent performance of the work, it is no defence to show merely that they had placed the work in the hands of a contractor, and that the obstruction was caused by the carelessness of one of his employes.

For another reason the doctrine of independent contractor can not excuse this company. When a passenger for pay, riding in a car, is injured by an accident, he has made out a *prima facie* case for recovery, and the railroad company must carry the burden of showing adequate defence. *Railroad Co.* v. *Wrightman's Adm'r*, 29 Gratt. 432; *Carrico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12). We are not shown the character of contract between the company and the persons furnishing the stone, or any of its pro visions, so as to enable us to say whether they were or were not independent contractors. We see no objection, therefore, to instruction 4.

Instruction No. 5.—"The court instructs the jury that if they believe from the evidence that the plaintiff was injured by being struck by a stone standing in dangerous proximity to the defendant's railroad track, and that the position of said stone was known to the defendant, or the

agents of said defendant, or might have been known to them by the use of ordinary care and diligence, and there was such negligence of said agents in failing to remove said stone, or in failing to use care and diligence in ascertaining whether said stone was in dangerous proximity to the track of said defendant, such negligence of said agents was the negligence of the defendant."

This instruction was approved when the case was heretofore in this Court. I see no objection to it now.

Instruction No. 6—"The jury are instructed that if they believe from the evidence that the plaintiff's arm was resting on the window-sill of the passenger car, the placing of his arm there was not negligence on the part of the plaintiff, provided, when resting upon said sill, it did not protrude beyond the window of the car."

Nothing is said against this instruction. It is obviously good.

Instruction No. 7—"The court instructs the jury that, even if they believe from the evidence that plaintiff's arm protruded beyond the window of the car, yet the plaintiff can recover if the jury further believe from the evidence that the injury to him would have occurred even if his arm had not protruded beyond the window of the car; and the burden of proving that the accident would have happened even if his arm had not protruded as aforesaid devolves upon the plaintiff."

This is said to be improper because irrelevant, as there was no evidence tending in the least to show that but for the arm's protruding out of the window, the injury would have happened. This we can not hold. Besides all the evidence of several witnesses stating positively that the arm was inside the car, and the conceded injury, thus tending to show that the injury occurred while the arm was not protruded out of the window, there are the indentations on the car forward and also in the rear of the seat in which Carrico sat, and the indentation on window facings on both sides of the window at that seat, tending to show that the scraping of the car began before reaching Carrico's seat, and, as the car was rounding a curve, and the stone was on its lower side, when the window reached the rock the pres-

sure towards the inside of the curve, or in the careening of the car, brought the stone inside the window on account of the open window's affording no resistence, and wounded the arm of the plaintiff; and there was evidence by one witness of an indentation on the inside of the window.

Question might be suggested as to this instruction in point of law. It was approved in this case heretofore. On page 401 of 35 W. Va., and page 12 of 14 S. E. Rep., President LUCAS approved this very instruction without discussion. On page 398, 35 W. Va., and page 12, 14 S. E. Rep., he states the general rule that, if the negligence of plaintiff and defendant is mutual, the plaintiff can not recover, and then states an exception to be that, if the injury would have happened just the same, although the plaintiff had been in no wise negligent, his negligence will not prevent his recovery.

If this rule be law, it will clearly vindicate instruction No. 7. Is the plaintiff denied relief in every instance in which he is chargeable with negligence? From the language usually adopted in expressing the rule that, where the negligence of plaintiff and defendant is mutual, the plaintiff can not recover, we might hastily so conclude ; but we must not be misled by the generality of that language. We must remember, that where both are negligent a cardinal rule is, that it is the negligence which is the proximate cause of injury, that is charged with responsibility for it. "*In jure non remota causa sed proxima spectatur.*" By proximate cause the law does not here refer to the degree or extent of the influence of the negligence in the production of the injury, but to its relation or connection with that injury in point of cause—its causal relation. Consequently, when the plaintiff's negligence in any degree helps in causing that injury, though the defendant's negligence also helps, we set off the negligence of the one against the negligence of the other as equal, and tell the plaintiff he can not recover, because we do not apply the rule of comparative negligence in this state, by apportioning between the plaintiff and defendant the effect of the negligence of each one in producing the injury and finding in favor of the less negligent.

But when the negligence of the plaintiff does not help in producing the injury, but that injury would have occurred just the same from the defendant's negligence, without the plaintiff's negligence, then the plaintiff's negligence is not efficient in the production of the injury. It is practically non-existent, because non-efficient. How can we say it is the proximate cause in such case? When we can not estimate or appreciate the influence of the plaintiff's negligence in the result—the injury—because the defendant's negligence would have caused it just the same if the plaintiff were free from negligence, we disregard the plaintiff's negligence as having in the eye of the law no causal relation to the injury. Then his negligence is non-contributory, and it is only with contributory negligence 'the law charges him, not simply negligence. If it be not contributory, it is collateral or remote only, and is immaterial. See *Washington* v. *Railroad Co.*, 17 W. Va. 190; *Fowler* v. *Railroad Co.*, 18 W. Va. 579; *Phillips* v. *County Court*, 31 W. Va. 477 (7 S. E. Rep. 427); Bish. Non-Cont. Law, § 459; Beach, Contrib. Neg. § 33; *Railroad Co.* v. *Righter*, 42 N. J. Law, 180; Shear. and R. Neg. § 93; 2 Ror. R. R. 1019.

Frequently has it been laid down by courts, that, if the injury would not have occurred but for the negligence of the plaintiff, he can not recover, and this is the same as to say conversely that, if his negligence is not such as, but for it, the injury would not have happened, he can recover; that is, if it would have happened anyhow, he may recover. *Railroad Co.* v. *Jones*, 95 U. S. 439; *Express Co.* v. *Nichols*, 33 N. J. Law, 434; *Railroad Co.* v. *Morris*, 31 Gratt. 200; Black, C. J., in *Railroad Co.* v. *Aspell*, 23 Pa. St. 149; opinion in *Railroad Co.* v. *Anderson's Adm'r*, 31 Gratt. 812, and especially cases cited; Cooley Torts. 674; *Railroad Co.* v. *Thomas's Adm'r*, 79 Ky. 166; *Northern Cent. R'y Co.* v. *State*, 29 Md. 420.

So we may place these two rules side by side. On the one hand, if the injury would have occurred just the same from defendant's negligence without plaintiff's negligence, the plaintiff can recover; and, on the other hand, if the injury would not have occurred but for the plaintiff's neg-

ligence, he can not recover. The eminent and very able and accurate law-writer, Mr. Bishop, says this test is inaccurate; but in so saying he discredits many high authorities. I grant that it is not infallible, because there may be some cases it will not suit; but practically it meets requirements in the courts. Of this I feel sure: that the rule propounded by instruction 7, as applied to this case, is correct. Is it not obviously true in law that, if the stone would have invaded the car through the window, and wounded Carrico's arm resting on the window-sill inside the car, no less than if his arm had been protruded out of the window, its protrusion is immaterial? Its mere protrusion did not cause an injury which the arm would have received whether it was inside or outside the window.

In the opinion of the court in *Railroad Co.* v. *Thomas's Adm'r*, 79 Ky. 166, it was held: "But, if the nature of the accident be such that the danger of injury was not enhanced in consequence of the position occupied by the passenger, his right to recover will not be affected by the fact that he was at an improper place." It is apposite here. I think the case of *Moakler* v. *Co.*, 17 Am. St. Rep. 717, also very apposite. "If the injury would have occurred notwithstanding the exercise of all due care by the plaintiff, his omission to take such care is immaterial." 1 Shear. & R. Neg. 93; sustained by opinion citing *Butterfield* v. *Forrester*, 11 East 60, in *Beers* v. *Railroad Co.*, 19 Conn. 566; opinion in *Wright* v. *Railroad Co.*, 20 Iowa, 214; *Short* v. *Knapp*, 2 Daly, 150. The law requires of the plaintiff only ordinary care to avoid injury. All agree to this. Then if ordinary care would not have prevented the defendant's negligence from working the injury, should the plaintiff be denied relief? 2 Thomp. Neg. 1150.

Instruction No. 8: "The court instructs the jury that, even if they believe from the evidence that the plaintiff was guilty of negligence, and that that negligence may have contributed to the injury, yet, if the jury further believe from the evidence that the negligent position of said plaintiff was known to the defendant or its servants, and that with such knowledge the injury to the plaintiff could then have been prevented by the use of care and diligence on

the part of said defendant or its servants, then the plaintiff's negligence will not excuse or relieve the defendant from liability."

This propounds the law correctly relating to one of the well known exceptions to contributory negligence. *Downey* v. *Railroad Co.*, 28 W. Va. 732; opinion in *Carrico* v. *Railroad Co.*, 35 W. Va. 398, 402 (14 S. E. Rep. 12); *Railroad Co.* v. *Anderson's Adm'r*, 31 Gratt. 812. This instruction is said to be bad in its use of the word "negligent" instead of "dangerous;" for that it is not enough that the defendant is aware of the negligence of the plaintiff, but he must also see that his negligence is bringing him into danger before he is required to act to save him. This is true. *Downey* v. *Railroad Co.* and *Carrico* v. *Railroad Co.* just cited. Yet I think the word "negligent" as applicable to the case, under the evidence of Kalbaugh that he saw Carrico's arm out of the window, and saw the rock, and saw the great danger to Carrico therefrom, as his arm was about to come in contact with the rock, and hallooed to him to look out, and waved to the engineer to stop—actual, imminent danger—could not have misled or been misapplied by the jury. Under the context of the instruction and the language following the word "negligent," I think we may say it was tantamount to "dangerous;" at least not so plainly misleading as to call for a new trial.

But it is said that the instruction is irrelevant and abstract, as no evidence tends to show the hypothesis contained in it, that it was at all in the defendant's power to save Carrico. The evidence of Kalbaugh, mentioned a few lines back, with the addition that Kalbaugh said he had no time at all, from his sight of Carrico's arm out of the window, to do more than shout to him "Look out!" is the evidence touching this instruction. Kalbaugh's evidence and his credit were before the jury. Weak to show the postulate of the instruction, it seems to me, it is true. And I am aware that *Bloyd* v. *Pollocks*, 27 W. Va. 75, holds that an instruction ought not to be given either when there is no evidence tending to sustain the state of facts stated in it, or when, though there is some evidence tending to do so, yet it is so weak that it would be the duty of the court to set aside a

verdict as contrary to the weight of evidence if based solely
on the assumption that the fact supposed in the instruction
was in fact true.   This proposition seems logical, and has
given me some question about this instruction.   In this in-
stance the weight of the contrary evidence of Kalbaugh is
complicated with credibility.   That was a case where the
instruction was refused.   Here it was given.   The cases may
be different.   A court might say that the evidence is too
light to constitute ground for an instruction, but here we
are asked to annul a verdict because the instruction was
given.   In *Hopkins* v. *Richardson,* 9 .Gratt. 485, it was held
that, if there is any evidence tending to prove a case sup-
posed in the instruction, the instruction should be given, if
correct in its law.

Judge Lee said that the function of determining whether
any proof of the hypothetical case has been given, and, if
not, of refusing an instruction, is one to be exercised with
great care and caution by a court.   In a plain case of total
absence of evidence to make out the supposed case the
court may well refuse the instruction, but where there is
evidence tending to do so, however little its weight may ap-
pear to the court to be, it is best to give it.   Such I have
always understood to be the law.   *Wheeling Bridge Co.* v.
*Wheeling & B. Bridge Co.,* 34 W. Va. 155 (11 S. E. Rep.
1009) ; Bart. Law Pr. 656.   While the law is that an in-
struction must not be given if not relevant, and it is not
relevant if there is no evidence tending to show the facts
on which it is based, [*Kerr* v. *Lunsford,* 31 W. Va. 663 (8
S. E. Rep. 493) and *Coffman* v. *Hedrick,* 32 W. Va. 120 (9
S. E. Rep. 65)] yet, as there is evidence here tending to show
the facts in it put, I think it is not error sufficient to reverse
the judgment.

On further reflection upon re-hearing I am confirmed in
what is above said as to this instruction ; and I will add
that Kalbaugh was standing on the lower step of the car,
looking for a passenger to get on the train going only two
miles an hour.   He saw, he says, Carrico's arm lying out
of the window as he looked along the train, and saw the
rock, and the ʳdanger to Carrico, and waved to another
brakeman to stop, with the expectation that the brakeman

would signal the engineer. Now, if his mind was impressed with the idea, that there was time enough to signal a brakeman, and for him to signal the engineer to avoid the danger, might the jury not say there was time enough for him to have run in to save Carrico? Kalbaugh's veracity was assailed by evidence intended directly to affect it, and his demeanor was before the jury, and on this trial he stated that he had not time to go into the car to save Carrico, but hallooed "Look out!" but admitted that on the former trial he had not stated that he had not time to warn Carrico, and did not remember whether he stated that he had hallooed "Look out!" I ask, was not the veracity of Kalbaugh before the jury? Did not the plaintiff have a right to ask the jury to say that he was not to be credited when he said he had not time to warn Carrico? Was it improper to give an instruction, under which the jury could inquire whether Kalbaugh, an employe on this train, if unable to reach Carrico, and drag his arm from the window, at least had time to take one or two steps to the car door, and shout to him, and alarm him and passengers near him as to his danger? Can it be that this Court must say that the question whether the employe could have warned Carrico, was not a proper one before the jury, because the evidence bearing on it was so very little as to make the instruction irrelevant under the circumstances and law above stated?

Instruction No. 9: "The court instructs the jury that, in order for the plaintiff to recover, it is only necessary that he make out his case by a preponderance of the evidence, and, if the defendant relies upon the contributory negligence of the plaintiff to defeat him, said contributory negligence must be proved by preponderance of all the evidence in the case, as well that of the plaintiff as that of the defendant.

I think this is good. The burden of proving contributory negligence is on the defence. *Snyder* v. *Railroad Co.*, 11 W. Va. 14; *Riley* v. *Railroad Co.*, 27 W. Va. 146, p't 9.

Instruction No. 10: "The court instructs the jury that, if they find for the plaintiff, they are, in estimating the damages, at liberty to consider the health and condition of

the plaintiff before the injury as compared with the present condition in consequence of said injury; and also whether said injury was permanent in its nature, and how far it is calculated to disable the plaintiff from engaging in those pursuits and occupations for which, in the absence of said injury, he would have been qualified, and also the physical suffering to which he was subjected by reason of said injury, and to allow such damages as, in the opinion of the jury, will be a fair and just pecuniary compensation for the injury which the plaintiff has sustained. The jury may include any losses that may occur in the future to the plaintiff, provided they are such as the jury believe from the evidence will actually result to the plaintiff as the proximate damages of the wrongful act complained of."

I see no objection to this instruction. *Riley* v. *Railway Co.*, 27 W. Va. 146, 161; *Wilson* v. *Wheeling*, 19 W. Va. 325; *Searle* v. *Railway Co.*, 32 W. Va., 370 (9 S. E. Rep. 248).

Instruction No. 11: "If the jury believe from the evidence that the defendant company, while using its track for the carriage of passengers, engaged in a work to be done on its road, or in immediate proximity to its track, negligence in the performance of which would, in the estimation and opinion of a reasonable, cautious person, involve the hazard of obstruction to the passage of cars, and an accident to a passenger is caused by an obstruction arising from negligence in the performance of the work, it is no defence for said railroad company to show that it had placed the work in the hands of a contractor, and that the obstruction was caused by the carelessness of one of his employes."

Counsel makes no argument against this instruction. It is clearly good, under principles above stated and approved as instruction 7 in *Carrico* v. *Railroad Co.*, 35 W. Va. 390 (14 S. E. Rep. 12) and it is literally point 3 in syllabus in *Railroad Co.* v. *Sanger*, 15 Gratt. 230.

Instruction No. 12: "The court instructs the jury that, even if they believe from the evidence that the arm of the plaintiff, after the injury, was on the outside of the car,

yet, if they further believe from the evidence that at the time the arm was caught by the stone it was not protruding beyond the window of the car, then the plaintiff can recover."

What does this instruction mean? What its aim? There was evidence that immediately after the injury Carrico's arm was hanging limp outside the window. The plaintiff's contention was, that, when injured it was on the window-sill inside the car window. This instruction, I think, was to meet before the jury the evidence that it hung out of the window; to tell the jury that, notwithstanding it was seen out of the window after the hurt, yet, if inside when hurt, he could recover. The words "can recover" support this theory, importing that, notwithstanding that the arm was seen outside the window after the accident, yet that would not prevent recovery. But suppose we say with appellant's counsel, that it assumes the essential fact of the defendant's negligence. It technically violates that cardinal rule touching instructions that an instruction must not assume facts as proven, or assume that the weight of the evidence is in favor of certain facts, thus taking those questions from the jury, or improperly influencing it. *Bank* v. *Als*, 5 W. Va. 50; *Harrison* v. *Bank*, 4 W. Va. 393; *Dickeschied* v. *Bank*, 28 W. Va. 341.

Still the instruction, while not defensible, is not cause for reversal for these reasons. It was incontrovertibly proven that Carrico was injured while a passenger on defendant's train. No two persons could logically differ as to this; it was a concession. That alone, in law, raised a *prima facie* case of negligence. *Carrico* v. *Railroad Co.*, 35 W. Va. 390 (14 S. E. Rep. 12); *Railroad Co.* v. *Noell's Adm'r*, 32 Gratt. 394. The only matter of contest before the jury was whether the plaintiff was guilty of contributory negligence meeting the plaintiff's negligence and defeating his action. How, then, could the defendant be injured by the assumption of negligence in the instruction—a fact incontrovertibly shown and conceded? *Sheff* v. *Huntington*, 16 W. Va. 307, p't 9.

As the defendant could not, for reasons stated above, have been prejudiced by said instruction, it is not cause of

reversal.  *Beatty* v. *Railroad Co.*, 6 W. Va. 388; *Clay* v. *Robbinson*, 7 W. Va. 348; *Bank* v. *Waddill*, 27 Gratt. 448. I do not think it tells the jury, that if the arm was inside the window, all else to fix liability on the company was established.  It would be rather straining the instruction to say so.  I think its fair meaning is that the fact, that the arm after the accident was found outside the car, ought not, over other circumstances, to show that when hurt it was not inside or prevent recovery.  But give it a construction in the other direction, then I say that if it be settled that the arm, when injured, was inside the car, under the facts of the case the company's liability follows.  What circumstance in such view relieves it?  As it does not assume, but leaves open to the jury, that decisive fact, the injury to a passenger being undenied and undeniable, liability follows.  How does the instruction wrong the company?  How can we reverse for that cause?

Question 4.  Is there error as to particular questions of fact submitted to the jury under section 5, c. 131, Code? They were in fact answered, but the answers are not part of the record, and we must say they were submitted but not answered.  While the jury is bound to answer them, and it is error for the court to go on to judgment without answers, yet if, as is the case here, the party submitting them allow the jury to be disbanded without asking answers, he has waived the answers.  2 Thomp. Trials, § 2685.

Motion for new trial overruled.

Here I need say but little, and will not give the evidence, covering three hundred and sixty eight printed pages.  If the plaintiff's arm was outside the window, let us say, he was chargeable with contributory negligence; otherwise he was not.  On that question the evidence was in irreconcilable contradiction, several witnesses saying that they saw the arm inside, several that they saw it outside, the window. Their credibility was involved.  Besides, very many facts and circumstances, such as the curvature of the road there, the location of the rock-pile, the shape and size of the rock as bearing on the probability of its invasion of the window and there doing the injury, the marks on the car, their character and location, the character and place of the

wounds on the arm, and many other features, from all which the jury had to make deductions—necessarily and indespensably so in coming to a verdict—were before the jury. Outside the credibility of witnesses, different persons might have different opinions from them. Even if we had doubt as to the correctness of the verdict, or would have come to a different verdict, we can not set it aside for that reason. *State* v. *Sebright,* 2 W. Va. 591; *State* v. *Thompson,* 26 W. Va. 149; *Miller* v. *Railroad Co.,* 12 W. Va. 116.

It is argued by appellant's counsel that the stones were about two feet square, and could not have entered the window; that physical evidence overrules the statement of several witnesses herein. The mashing or mangling of the upper arm tends to show that the stone pressed it against the jamb of the window. The indentation made by bone or rock there so tends. Just how it entered the window we can not say. A witness for defendant says the upper corner of a stone did the injury. The corner may have projected, and in the slant or careening of the car only the corner entered the car angularly. The many facts and features here coming up for consideration I will not detail. They were proper for the jury on the question of fact:— Was the arm injured inside the window? The jury by its verdict on this vital question dependent on a mass of evidence and circumstances and on inferences and deductions therefrom have found that the stone invaded the car. In such case the jury, not the court, are exclusively and uncontrollably the judges. *State* v. *Cooper,* 26 W. Va. 338.

Can we assume the function of a jury, take scales and nicely weigh evidence, great in volume, and on many points and from many witnesses, and strike a balance, and discredit witnesses giving direct, positive evidence, whose faces and demeanors we see not? We can not thus invade the function of the trial court and jury. In such case the opinion of the lower court and jury is entitled to peculiar respect. *Reynolds* v. *Thompkins,* 23 W. Va. 229.

There is some confusion in the cases as to when this Court should set aside a verdict on the merits. It may do so when the verdict is manifestly and clearly against the weight of

evidence ; but such power should be cautiously exercised—only where there is a plain deviation from right and justice, not simply because we have doubt of the correctness of the verdict. *Black's Adm'r* v. *Thomas*, 21 W. Va. 709 ; *State* v. *Cooper*, 26 W. Va. 338 ; *Martin* v. *Thayer*, 37 W. Va. 38 (16 S. E. Rep. 489) ; *Hatfield* v. *Workman*, 35 W. Va. 578 (14 S. E. Rep. 153). But we do not see that under any of the cases this Court can do so in this case, as it would seem to us to be an invasion of the just functions of the jury and the trial-court. *Sheff* v. *Huntington*, 16 W. Va. 307, p'ts 12, 13, 14 ; *Wheeling Bridge Co.* v. *Wheeling & B. Bridge Co.*, 34 W. Va. 155 (11 S. E. Rep. 1009).

I have carefully and patiently reviewed this case, and again reviewed the points relied upon on the rehearing, as it not only involves various questions, but also the considerable liability of a verdict of nine thousand dollars, besides attendant costs. The amount involved is considerable, but the injury to the plaintiff is grievous and irreparable. Two trials have resulted in substantially the same result, and, seeing no error calling for reversal, we must affirm the judgment.

NOTE BY BRANNON, PRESIDENT:—When I wrote the above opinion, it seemed to me that the ruling of the Circuit Court on this point was so plainly right, that it did not occur to me that it was necessary to say more about it; but as it is suggested that it may be important in practice, I add this note.

In *Mulhado* v. *Brooklyn*, 30 N. Y. 370, it was held that in an action for personal injury there is no objection to the exhibition of the injured limb by the plaintiff to the surgeon called to describe the injury, before the jury.

The court must have regarded the matter as presenting no difficulty, as the opinion simply remarks that there was no force in the objection to the exhibition of the limb.

In *Indiana Car Co.* v. *Parker*, 100 Ind. 181, it was held no error to allow the plaintiff in the course of his testimony to exhibit the injured hand to the jury in an action for personal injury. In *Louisville, &c.* v. *Wood*, 113 Ind. 544, held that in an action for personal injury, the injured member may be inspected by the jury. In that case will be found an exhaustive discussion of the subject. This evidence would fall under the head of proof by inspection, or profert of the person. It was called in civil law proof *per aspectum*. and was regarded as the strongest evidence in such cases. Who would say that Carrico could not present his limbless shoulder as the highest and most indubitable evidence of the fact he sought and was entitled to prove, that he lost his arm by reason of the injury.

Abbot's Trial Ev. 599, tells us that the "injured party may testify directly to his physical condition, ability to work, travel, &c., if his testimony is confined to the facts within his knowledge or consciousness, as distinguished from matters of professional skill and opinion. The injured member may be exhibited to the jury "

Wharton's Cr. Ev. § 312, tells us that, "injury to the person may be also proved by inspection. Thus in an action to recover damages for injury to a limb, the injured limb may be exhibited on trial."

"Immediate real evidence is where the thing which is the source of the evidence is present to the senses of the tribunal. This is of all evidence the most satisfactory and convenient." 2 Best. Ev. § 197.

1 Taylor's Ev. 513, asserts that this species of evidence is always competent and of the highest rank.

In the case of *Alberti* v. *N. Y. &c. Co.*, 118 N. Y., in an action for damages for a personal injury to a passenger on a railroad train, a photograph of the plaintiff showing how his limbs were contracted as a result of accident was held admissible evidence. If the photograph was competent evidence, much more so would be the naked limb. The mere unclothing of it would not in that case have been objectionable, nor can it be in this case.